In the Matter of ELSINORE SHORE ASSOCIATES, f/k/a Playboy Elsinore Associates, a New Jersey partnership, d/b/a the Atlantis Casino Hotel, Debtor.

ELSINORE SHORE ASSOCIATES, f/k/a Playboy Elsinore Associates, a New Jersey partnership, d/b/a the Atlantis Casino Hotel, Plaintiff,

v.

NEW JERSEY DIVISION OF ALCOHOLIC BEVERAGE CONTROL and John F. Vassallo, Jr., in his capacity as Director of New Jersey Division of Alcoholic Beverage Control, Defendants.

Bankruptcy No. 85–06058.
Adv. No. 85–0242.

United States Bankruptcy Court,
D. New Jersey.

April 2, 1986.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Karen A. Giannelli, Geraldine E. Ponto, Newark, N.J., for Elsinore Shore Associates.

Valore, McAllister, Westmoreland, Gould, Vesper & Schwartz by Alan I. Gould, Wildwood, N.J., for Creditors' Committee.

James C. Fogarty, Deputy Atty. Gen., State of N.J., Div. of Gaming Enforcement, Lee Barry, Barbara A. Pryor, Deputy Attys. Gen., State of N.J., Dept. of Law and Public Safety, Div. of Law, for New Jersey Div. of Alcoholic Beverage Control.

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The instant matter is an Order to Show Cause and Complaint filed by the debtor, Elsinore Shore Associates, d/b/a The Atlantis Casino Hotel (debtor), against the New Jersey Division of Alcoholic Beverage Control (ABC) and its Director, John F. Vassallo, Jr.

In this case, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 14, 1985. At the time of the filing of the petition, the debtor, as the owner and operator of the Atlantis Casino Hotel in Atlantic City, New Jersey, was a licensed retailer of alcoholic beverages in the state of New Jersey. Accordingly, the debtor made purchases of alcoholic beverages from approximately fifteen New Jersey wholesalers on a weekly basis in the ordinary course of its business. Purchases were made in the approximate amount of $16,000.00 to $17,000.00 per week, subject to credit terms with the wholesalers of net thirty days. At the time of the filing of the Chapter 11 petition, the debtor's total amount of unpaid invoices for prepetition purchases of alcoholic beverages from all of its wholesalers totalled $75,638.24.

Since the debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on November 14, 1985, New Jersey wholesalers of alcoholic beverages have suspended the debtor's credit terms pursuant to N.J.Admin.Code tit. 13, § 2–24.4 (1984), a credit regulation promulgated by the director of the ABC. Pursuant to N.J. Admin.Code tit. 13, § 2–24.4 (1984), credit terms established by an individual wholesaler shall be offered equally to all retailers unless different terms as to an individual retailer are justified by the financial or credit history or risk of the individual retailer. N.J.Admin.Code tit. 13, § 2–24.4(a) (1984). The regulation permits wholesalers of alcoholic beverages to extend credit to retailers for a maximum of thirty days from the date of delivery of the alcoholic beverages. N.J.Admin.Code tit. 13, § 2–24.4(a)(1) (1984). If payment is not tendered within thirty days, wholesalers must transmit a "Notice of Obligation" to the defaulting retailer or its employee within three business days of the date the obligation was due. N.J.Admin.Code tit. 13, § 2–24.4(b) (1984). The "Notice of Obligation" shall inform the defaulting retailer of the amount due, the date the delinquency occurred, and the consequences of nonpayment. N.J.Admin.Code tit. 13, § 2–24.-4(b)(1) (1984). If the debt still remains unpaid, a "Notice of Delinquency" must be transmitted by the wholesaler to all wholesalers of alcoholic beverages in this state, and to the retailer who is the subject of the notice. N.J.Admin.Code tit. 13, § 2–24.4(c) (1984). Wholesalers who receive a "Notice of Delinquency" may only sell liquor to the defaulting retailer on a cash basis, until the retailer pays the existing debt and a "Notice of Satisfaction" is issued by the wholesaler. N.J.Admin.Code tit. 13, § 2–24.-4(c)(2)–(d)(1) (1984). Additionally, N.J.Admin.Code tit. 13, § 2–24.4(g) (1984) provides that in the discretion of the Director, the provisions of N.J.Admin.Code tit. 13, § 2–24.4 (1984) may be relaxed "where a formal

debt liquidation plan has been entered into" by a debtor-retailer.

On November 19, 1985, Majestic Time & Spirits, a wholesaler of alcoholic beverages to the debtor, issued a "Notice of Obligation" to the debtor pursuant to N.J.Admin.Code tit. 13, § 2–24.4(b) (1984) informing the debtor that it was delinquent in payment of two prepetition invoices for the purchase of alcoholic beverages. On November 25, 1985, the debtor was informed by the ABC that enforcement of the provisions of the credit regulation in this case would not be relaxed. On or about December 2, 1985, the debtor received a "Notice of Obligation" from Harrison Beverage Co., another of its wholesalers, for a prepetition delivery of alcoholic beverages.

Beginning with the debtor's first post-petition purchase of alcoholic beverages, alcoholic beverage wholesalers placed the debtor on a "c.o.d.-only" basis since the debtor had failed to pay prepetition invoices to them. The debtor alleges that the c.o.d. payment requirement has severely disrupted its business, specifically the purchasing and accounting functions thereof. The debtor further contends that application of N.J.Admin.Code tit. 13, § 2–24.4 (1984) to it penalizes it for complying with federal bankruptcy law, and constitutes discriminatory treatment from which it is entitled to protection pursuant to 11 U.S.C. § 525. Additionally, the debtor claims that imposition of the regulation interferes with the debtor's right to a breathing spell in violation of the automatic stay provisions of 11 U.S.C. § 362(a)(1), and does not fall within the police power exception to the automatic stay contained in 11 U.S.C. § 362(b)(4). In the alternative, the debtor asserts that if the enforcement of the regulation falls within the exception to the automatic stay, the court should enjoin the enforcement of the regulation under 11 U.S.C. § 105(a).

By its complaint and order to show cause, the debtor seeks an order and judgment (1) declaring the operation of N.J.Admin.Code tit. 13, § 2–24.4 (1984) as enforced by the ABC and its director against the debtor, discriminatory treatment from which the debtor is protected under 11 U.S.C. § 525; (2) declaring the operation of N.J.Admin.Code tit. 13, § 2–24.4 (1984) to be subject to the automatic stay provision of 11 U.S.C. § 362(a), and; (3) requiring the ABC and its director to remove the debtor from any delinquency list on which the debtor's name appears as a result of the debtor's failure to pay dischargeable prepetition invoices of wholesalers for prepetition purchases of alcoholic beverages. In the alternative, the debtor seeks: (1) an injunction prohibiting the enforcement of N.J.Admin.Code tit. 13, § 2–24.4 (1984) against the debtor, and compelling the removal of the debtor's name from any delinquency list circulated to New Jersey wholesalers of alcoholic beverages pursuant to 11 U.S.C. § 105(a), and; (2) other and further equitable relief.

The ABC and its director, the defendants herein, seek dismissal of the debtor's complaint. Defendants contend that they have not taken any action against the debtor based upon the debtor's Chapter 11 status. Furthermore, defendants claim that they should not be precluded from enforcing N.J.Admin.Code tit. 13, § 2–24.4 (1984) against the debtor because: (1) the debtor may still serve alcoholic beverages to its customers; (2) the debtor may establish a funded line of credit against which future purchases may be drawn, and; (3) the debtor may obtain reestablishment of a credit arrangement pursuant to N.J.Admin.Code tit. 13, § 2–24.4(g) (1984) when it enters into a reorganization plan.

Furthermore, the defendants, by way of their answer, raise the following defenses: (1) the complaint fails to set forth a cause of action upon which relief can be granted; (2) this court lacks jurisdiction over the subject matter; (3) the plaintiff has not been deprived of any right, privilege or immunity secured by the United States Constitution or any Act of Congress; (4) defendants acted at all times in good faith and without fraud or malice; (5) defendants did not know, and were not expected to know, that any actions taken by them with respect to the plaintiff were in viola-

tion of plaintiff's constitutional rights; (6) plaintiff's request for injunctive and declaratory relief is barred by the Eleventh Amendment of the United States Constitution; (7) 28 U.S.C. § 157 does not authorize a non-Article III bankruptcy court to invalidate a state statute or regulation; (8) plaintiff's position pursuant to N.J.Admin.Code tit. 13, § 2–24.4 (1984) does not constitute an "action" or "proceeding" and thus is not within the provisions of 11 U.S.C. § 362(a); (9) if 11 U.S.C. § 362(a) is applicable in the instant matter, defendants are exempt from operation of the automatic stay under 11 U.S.C. § 362(b)(4); (10) 11 U.S.C. § 525 is inapplicable to this action; (11) plaintiffs have not suffered irreparable harm; (12) under the Twenty-First Amendment of the United States Constitution, the State of New Jersey has the right to promulgate rules and regulations governing the conduct between alcoholic beverage retail licenses, and wholesalers and distributors of alcoholic beverages, and; (13) N.J.Admin. Code tit. 13, § 2–24.4 (1984) is a reasonable regulation which promotes stability of the alcoholic beverage industry and provides for the welfare of the people of New Jersey.

This court must first address the issue of this court's jurisdiction over the instant action.

On July 10, 1984, the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Act) became law. The 1984 Act amended 28 U.S.C. § 1334 to vest the district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157 of 28 U.S.C. limits the authority of bankruptcy judges to act in referred matters. Title 28 U.S.C. § 157 provides in relevant part:

（a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

Pursuant to an order dated July 23, 1984, and signed by Chief Judge Clarkson Fisher of the United States District Court for the District of New Jersey, the District Courts of this District have referred to bankruptcy judges "all cases under Title 11 of the United States Code and any or all proceedings arising under Title 11 of the United States Code, or arising in or relating to a case under Title 11 of the United States Code." The legislative history relating to Title 28 U.S.C. § 157 evidences an intent that only a narrow category of cases be construed as non-core proceedings. *See,* 130 Cong.Rec. H 7492, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad.News 576, 579. Title 28 U.S.C. § 157(b)(2) contains a nonexhaustive list of "core" proceedings, including:

(A) matters concerning the administration of the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2)(A), (O).

■ The controversy presently before this court is whether the enforcement of N.J.Admin.Code tit. 13, § 2–24.4 (1984) against the debtor violates 11 U.S.C. §§ 105, 362(a) and 525. Such a case falls squarely within 28 U.S.C. § 157(b)(2)(A) and (O) since it concerns the administration of the debtor's estate and affects the debtor-creditor relationship.

■ This court recognizes that a bankruptcy court should not assume jurisdiction over a matter that does not involve the administration or property of a bankrupt estate. *See, e.g., In re Ennis,* 50 B.R. 119, 121 (Bkrtcy.D.Nev.1985); *In re Palmer*

*Construction Co., Inc.,* 7 B.R. 232, 233 (Bkrtcy.D.S.D.1980). Here the court is satisfied that the enforcement of N.J.Admin. Code tit. 13, § 2–24.4 (1984), a state credit regulation regarding retail purchases of alcoholic beverages, affects the administration of the instant bankruptcy estate so as to confer bankruptcy court jurisdiction.

 The defendants also contend that the instant matter is barred by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

This court accepts the well established principle that an action against a state agency seeking monetary damages from public funds cannot be maintained. However, the instant debtor would be entitled to injunctive relief if, as it maintains, the state credit regulation conflicts with federal bankruptcy law. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *In re Mart i.l. v. e.s. Goldrich,* 45 B.R. 514 (Bkrtcy.E.D.N.Y.1984).

Moreover, 11 U.S.C. § 106(c) provides in relevant part:

notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains 'creditor', 'entity', or 'governmental unit' applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Thus, where sections of title 11 are applicable to governmental units, sovereign immunity is deemed waived and the bankruptcy court has jurisdiction to hear, decide and enforce its decision regarding the issue before it. *See, In re Coleman American Moving Services, Inc.,* 8 B.R. 379, 382 (Bkrtcy.D.Kan.1980). As will be discussed below, 11 U.S.C. § 362 and § 525 specifically refer to "governmental unit." Accordingly, this court may make determinations under those statutory sections which bind governmental units. "Governmental unit" is defined under the Bankruptcy Code to mean, "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(24). The defendants fall within this definition of governmental unit.

Having established that this court has jurisdiction over the instant matter and that the defendants constitute a governmental entity, concerning which this court may render binding decisions, this court will move to the merits of the case before it.

 This court rejects the defendants' contention that the operation of N.J.Admin. Code tit. 13, § 2–24.4 (1984) is not subject to the automatic stay because it does not constitute an "action or proceeding" within 11 U.S.C. § 362(a)(1). Under 11 U.S.C. § 362, the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of," among other things:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a).

The scope of this section is very broad and encompasses all proceedings, even

those not before governmental tribunals. H.R. No. 595, 95th Cong., 2d Sess. at 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6297. *See also, In re Advent Corp.*, 24 B.R. 612, 614 (Bkrtcy. 1st Cir.1982) (attempt to cancel bond is proceeding under 11 U.S.C. § 362); *In re Wegner Farms Co.*, 49 B.R. 440, 442 (Bkrtcy.N.D.Ia.1985) (bonding company's cancellation of bond is "proceeding" against Debtor within meaning of 11 U.S.C. § 362(a)(1)); *In re R.O.A.M. Inc.*, 15 B.R. 616, 617 (Bkrtcy.D.Nev.1981) (attempt to cancel bond is proceeding under 11 U.S.C. § 362). Accordingly, the ABC's suspension of credit terms in the instant matter, by enforcement of N.J.Admin.Code tit. 13, § 2–24.4 (1984) constitutes an "action or proceeding" cognizable within the provisions of 11 U.S.C. § 362(a).

The defendants also argue that as a prerequisite to the operation of the automatic stay, 11 U.S.C. § 362(a)(1) requires that the "action or proceeding" be one that could have been begun before the commencement of the bankruptcy case. They support this argument by noting that the operation of N.J.Admin.Code tit. 13, § 2–24.4 (1984) was triggered by the debtor's failure to pay for liquor purchases within thirty days after delivery. This, the defendants contend, did not occur prior to the filing of the bankruptcy petition, and therefore, N.J.Admin.Code tit. 13, § 2–24.4 (1984) could not have been invoked, and was not a proceeding which could have been commenced, before the bankruptcy case.

The Third Circuit Court of Appeals in the case of *Matter of M. Frenville Co.*, 744 F.2d 332 (3rd Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), set forth the limits of the 11 U.S.C. § 362 stay. The court noted that 11 U.S.C. § 362(a)(1) operates as a stay against a proceeding which "was or could have been commenced" before the filing of the bankruptcy petition, or which is based upon a claim that arose prepetition. 744 F.2d at 334–335. In the instant matter, the "claim" is based upon the debtor's unpaid

liquor invoices, which debts existed prior to the debtor's filing of a petition under Chapter 11 of the Bankruptcy Code.

Having found that the operation of N.J. Admin.Code tit. 13, § 2–24.4 (1984) is an action or proceeding subject to the automatic stay, this court must examine the defendants' contention that the ABC's enforcement of the credit regulation is exempt from the stay under 11 U.S.C. § 362(b)(4). Section 362(b)(4) and (5) provide:

(b) The filing of a petition … does not operate as a stay—

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

The legislative history of this section is instructive as to its purpose:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental

unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

H.R. No. 595, 95th Cong., 2d Sess. at 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 6299.

The case of *In re Jacobsmeyer*, 5 C.B. C.2d 38, 13 B.R. 298 (Bkrtcy.W.D.Mo.1981) was decided under 11 U.S.C. § 362. In *In re Jacobsmeyer*, the debtors were engaged in the retail sale of alcoholic beverages. As a result of prepetition debts, and pursuant to state law, wholesale liquor distributors refused to fill the debtors' orders. The debtors contended that they would be unable to reorganize their financial affairs if they were not permitted to purchase stock for sale. Accordingly, the debtors sought to have the wholesalers held in contempt for violation of 11 U.S.C. § 362.

The defendant in *In re Jacobsmeyer* contended that enforcement of the regulations at issue was an exercise of police power within the meaning of 11 U.S.C. § 362(b)(4), and thus was excepted from the automatic stay provisions. The *In re Jacobsmeyer* court determined that the state regulations affected the welfare and morals of the public and only indirectly protected pecuniary interests. However, the court noted that enforcement of the state regulations would be in direct conflict with the federal bankruptcy code, and thus it enjoined the enforcement of the state regulations. In so concluding, the court stated:

> here the regulations, if enforced, would require debtors to pay prepetition debts as a condition of performing under a Chapter 13 plan. Both the treatment of prepetition debts and performance in accordance with a plan under Chapter 13 form the basis of much of the Bankruptcy Code and are of fundamental concern to the Court in its administration of proceedings under the Code. Thus, the Court cannot allow state law to determine the treatment of prepetition debts except insofar as the differences in treatment are authorized by the Code. The enforcement of this regulation would cause debtor to pay in full certain unse-

cured debts, resulting in preferential or discriminatory treatment, or both, of some creditors in relation to others.

5 C.B.C.2d at 42–43, 13 B.R. 298.

The case of *In re Aegean Fare, Inc.*, 35 B.R. 923 (Bkrtcy.D.Mass.1983), which is factually similar to the instant matter, was also decided under 11 U.S.C. § 362. In *In re Aegean Fare*, the debtor was a restaurant owner. After the debtor's restaurants were seized by the Commonwealth of Massachusetts due to the debtor's failure to pay meals taxes, the debtor filed a petition under Chapter 11 of the Bankruptcy Code. Subsequently, the court ordered the Commonwealth to turn over possession of the premises to the debtor. The Licensing Board for the City of Boston (Board) refused to renew the debtor's liquor licenses pursuant to a state statute requiring a licensee in bankruptcy to either pay prepetition taxes or develop a repayment plan with the Department of Revenue as a prerequisite to license renewal. The *In re Aegean Fare* court found that the sole reason for the refusal to renew the licenses was the debtor's failure to pay prepetition meals taxes, and his failure to enter into a repayment plan with the Commonwealth.

The debtor in *In re Aegean Fare* argued that the Board's action in refusing to renew his licenses was a direct violation of the automatic stay provision, 11 U.S.C. § 362, of the bankruptcy code. The Board, however, contended that its issuance of liquor licenses was exempt from the automatic stay by reason of 11 U.S.C. § 362(b)(4). The court rejected the Board's argument, and found that the purpose and effect of the state law was to frustrate basic policies of the federal bankruptcy code. Accordingly, the court in *In re Aegean Fare* stayed the enforcement of the state law, finding it to be violative of the Supremacy Clause of the United States Constitution.

To determine whether 11 U.S.C. § 362(b)(4) or (5) applies in the instant matter, this court must first determine the purpose and operation of the credit regulation at issue. The relevant portions of the

N.J.Admin.Code tit. 13 § 2–24.4 (1984) have been set forth above. This court rejects the debtor's analysis that the purpose of the state regulation is to promote the pecuniary benefit for alcoholic beverage wholesalers. The Supreme Court of this state has clearly recognized the public interest inherent in the regulation of credit in the liquor industry. *See, Heir v. Degnan,* 82 N.J. 109, 411 A.2d 194 (1980); *F & A Distributing Co. v. Division of Alcoholic Beverage Control,* 36 N.J. 34, 174 A.2d 738 (1961). *Accord, In re Jacobsmeyer,* 5 C.B. C.2d 38, 13 B.R. 298 (Bkrtcy.W.D.Mo.1981). Furthermore, this court recognizes the right of a state to regulate the liquor industry pursuant to its police power and pursuant to powers granted to states under the Twenty-First Amendment of the United States Constitution. *See, e.g., California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Joseph H. Reinfeld, Inc. v. Schieffelin & Co.,* 94 N.J. 400, 466 A.2d 563 (1983).

In the State of New Jersey, N.J.Stat. Ann. § 33:1–39 (West Cum.Supp.1985) confers upon the Director of the ABC, the power to promulgate regulations governing the manufacture, sale and distribution of alcoholic beverages, including sales on credit. In the case of *F & A Distributing Co. v. Division of Alcoholic Beverage Control,* 36 N.J. 34, 174 A.2d 738 (1961), the director's power to regulate wholesale credit was upheld. In that case, the director's power was challenged by a wholesale liquor licensee whose license had been suspended for violation of Rule 4(a) of Regulation 39, a prior credit regulation. Regulation 39 prohibited the sale and delivery of alcoholic beverages on credit to any retail licensee who, at the time of the sale, was on the Default List published by the Division. The New Jersey Supreme Court in upholding Regulation 39 stated:

> Extension of credit as an evil to be controlled in the business of selling intoxicating drink has long been a matter of public concern. See Act, February 24, 1797, *Paterson's Laws* 235. The Director issued Regulation 39 because of a belief that the granting of credit in the

situation described would undermine an orderly market 'within the trade itself' and would eventuate in public harm. There can be no reasonable doubt as to his authority in the matter. R.S. 33:1–23; 33:1–39.

36 N.J. at 36, 174 A.2d 738.

In *Heir v. Degnan,* 82 N.J. 109, 411 A.2d 194 (1980) the New Jersey Supreme Court examined N.J.Admin.Code tit. 13, § 2–24.4 (1984), upon a challenge by liquor retailers and wholesale solicitors. The court upheld the power of the Director of the ABC to regulate wholesale credit practices, finding that the regulation promoted stability and was "designed to prevent discriminatory extensions of credit and predatory price cutting and the unwholesome results therefrom." 82 N.J. at 124, 411 A.2d 194.

Robert J. Pinard, Deputy Director of the Regulatory Bureau of the ABC testified at the January 10, 1986 hearing before this court, that the purpose of the New Jersey wholesale credit regulation is to prevent illegal coercing or unlawful inducements that might flow between liquor suppliers or wholesalers and liquor retailers. Deputy Director Pinard expressed the State's concern over maintaining a three-tiered distribution system consisting of manufacturer, wholesaler, and retailer, to prevent the evils of the "Tied House" where manufacturer or wholesaler gain control over retail license establishments. Deputy Director Pinard further testified that in his opinion, relaxation of the credit regulation in this case would destroy the uniform application of the law as it now exists in the state of New Jersey.

■ Notwithstanding their purpose, however, state laws and regulations generally may not frustrate the operation of federal law. A conflict between state and federal law presents questions of federal supremacy and pre-emption. *See, Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Penn Terra Ltd. v. Department of Environmental Resources, Commonwealth of Pennsylvania,* 733 F.2d 267, 272 (3rd Cir.1984).

The Third Circuit, in the case of *Penn Terra Ltd. v. Department of Environmental Resources, Commonwealth of Pennsylvania*, 733 F.2d 267 (3rd Cir.1984) (*Penn Terra*), was called upon to determine whether a conflict existed between the federal bankruptcy code and state environmental laws promulgated by the Commonwealth of Pennsylvania. In *Penn Terra*, the Commonwealth of Pennsylvania was attempting to force a company, which had filed a petition for relief under the Bankruptcy Code, to correct violations of state environmental laws. Correction of the violations, however, would deplete the assets of the corporation, which assets would otherwise have been used to repay the debts of general creditors.

In determining whether the automatic stay provisions of 11 U.S.C. § 362 operated to preclude the state from enforcing its environmental laws, the *Penn Terra* court examined the underlying policies of both laws, as well as the general policies regarding pre-emption. The court noted that the protection and preservation of a debtor's assets, so that the funds may be equitably distributed amongst the debtor's creditors without unfair preference, is central to the statutory scheme of the Bankruptcy Code. The court further noted the important purposes of the state's environmental laws, which are the protection and preservation of the state's natural resources and the correction of damage to the environment by those who caused the harm. Finally, the court acknowledged that respect must be given to the independent sovereignty of the states, and that federal supremacy must not be lightly invoked.

Ultimately, the *Penn Terra* court established that Pennsylvania's enforcement of its environmental laws was clearly an exercise of the state's police and regulatory power as provided in 11 U.S.C. § 362(b)(4), and that consequently, the enforcement of the environmental laws was not precluded by the automatic stay. However, in construing 11 U.S.C. § 362(b)(4), the court noted that "in some individual situations, the exercise of State power, even for the protection of the public health and safety, may

run so contrary to the policy of the Bankruptcy Code that it should not be permitted." 733 F.2d at 273.

The *Penn Terra* court noted that even where the automatic stay does not apply to state action pursuant to the exception contained in 11 U.S.C. § 362(b)(4), the bankruptcy court may, in its discretion, issue an injunction under 11 U.S.C. § 105. The Third Circuit Court of Appeals noted that Congress explicitly considered 11 U.S.C. § 105 when it excepted government regulation from the automatic stay. Accordingly, the *Penn Terra* court quoted Senate Report Number 95–989 thusly:

Subsection (b) lists seven exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction.

The court has ample other powers to stay actions not covered by the automatic stay. Section 105, of the proposed title 11, derived from the Bankruptcy Act § 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity [statutory citations omitted]. Stays or injunctions issued under these other sections will not be automatic upon commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine whether a particular action which may be harming the estate should be stayed.

733 F.2d at 273 (quoting S.Rep. No. 95–989 at 51, 1978 U.S.Code Cong. & Ad.News at

5787, 5837; H.Rep. No. 95–595 at 342, 1978 U.S.Code Cong. & Ad.News at 5963, 6298).

Similarly, the United States Supreme Court addressed the issue of a conflict between the Bankruptcy Act and state legislation in the case of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The state legislation in question in *Perez* was a provision of Arizona's Motor Vehicle Safety Responsibility Act, which provided for the suspension of the license of a driver involved in a motor vehicle accident, and the suspension of the registration of the accident vehicle, until security, sufficient to satisfy any judgment which might be obtained for damages resulting from the accident was deposited. Another provision of the same Act provided that a discharge in bankruptcy would not relieve the debtor from any requirements of the Act. Furthermore, pursuant to Arizona law, once an individual's license and registration had been suspended, they remained suspended and no other license or registration could be issued in the same name, until the individual gave proof of future financial responsibility.

Adolfo Perez, the debtor in the *Perez* case, asserted that application of these motor vehicle provisions as to him was in direct conflict with § 17 of the Bankruptcy Act, 11 U.S.C. § 35, and was unconstitutional as violative of the Supremacy Clause of the United States Constitution. Section 17 of the former Bankruptcy Act provided that receipt of a discharge in bankruptcy completely discharged all but certain specified judgments.

The *Perez* court set forth a two step test for determining whether a state and federal statute are in conflict so as to render the state statute invalid under the Supremacy Clause. Pursuant to the test, the statutes at issue must first be construed, and next the statutes must be compared to determine whether a conflict exists. Applying this test to the facts of the case, the *Perez* court determined that the purpose of the state automobile regulations was to protect the public using the highways from financial hardship resulting from the negligence

of financially irresponsible automobile operators. In construing the Bankruptcy Act, the court established that the purpose of the Act was to provide debtors with " 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' " 402 U.S. at 648, 91 S.Ct. at 1710 (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

Turning to the second step of the two-prong test, the *Perez* court maintained that its function was to determine whether the state statute " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " 402 U.S. at 649, 91 S.Ct. at 1711 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Ultimately, the court concluded that the statutes were in conflict, and that thus, the automobile regulations were constitutionally invalid.

■■■■ Section 525 of the Bankruptcy Code codifies the Supreme Court's decision in *Perez v. Campbell.* Title 11 U.S.C. § 525 provides in relevant part:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

The defendants in the matter presently before the court assert that the operation of N.J.Admin.Code tit. 13, § 2–24.4 (1984) does not affect the type of privilege or grant to a debtor that is encompassed by 11 U.S.C. § 525, since credit terms are not like a license or a permit. The legislative history of 11 U.S.C. § 525, however, indicates that the list of forms of discrimination contained in 11 U.S.C. § 525 is not intended to be limiting:

> The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the *Perez* rule.... The effect of the section, and of further interpretations of the *Perez* rule, is to strengthen the anti-reaffirmation policy found in § 524(b). Discrimination based solely on nonpayment could encourage reaffirmations, contrary to the expressed policy.

S.Rep. No. 989, 95th Cong., 2d Sess. 81, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5867.

 The purpose of 11 U.S.C. § 525 is to protect a debtor's means of earning a living or pursuing a livelihood. Accordingly, a governmental unit may not discriminate against an individual so as to frustrate the fresh start policies of the bankruptcy code, simply because the individual has filed a petition under title 11 of the Code. *Matter of Anderson*, 15 B.R. 399, 400 (Bkrtcy.S.D.Miss.1981). Thus, whenever state regulations frustrate the underlying purposes of the Code, they are violative of 11 U.S.C. § 525 and may not be enforced against a debtor. *Id.* In *Matter of Anderson*, 15 B.R. 399 (Bkrtcy.S.D.Miss. 1981), the court precluded the enforcement of a state regulation against debtors pursuant to 11 U.S.C. § 525. The regulation at issue in *Matter of Anderson* prohibited the renewal of the debtors' liquor license due to their failure to pay monies owed to the State Tax Commission. The court found that the non-renewal of the liquor license would preclude the reorganization of the debtors since it would force them to close their store and lose their means of earning a living. Accordingly, the court ordered the State Tax Commission to renew the debtors' liquor license and to continue to supply the debtors with alcoholic beverages on a cash basis.

In the case of *In re William Tell II, Inc.*, 38 B.R. 327 (N.D.Ill.1983), the court employed 11 U.S.C. § 525 to preclude the operation of a state statutory provision against a debtor. In that case, William Tell II, Inc. (William Tell), the debtor, was engaged in the restaurant, liquor lounge and banquet hall business. Accordingly, the debtor made retail sales of alcoholic beverages and possessed a retail liquor license issued by the State of Illinois and the city in which William Tell operated.

On May 14, 1980, after a hearing, the debtor's liquor license was revoked by the State of Illinois Liquor Control Commission (Commission), because of the debtor's failure to pay outstanding state retailers' occupation tax. Since the debtor's license expired in May, it applied for a renewal of its license, and a new license was granted. On October 8, 1980, after a hearing, this license was also revoked by the Commission, allegedly due to false statements contained in the license application. William Tell challenged this revocation in the County Circuit Court, and the parties entered into agreements pursuant to which the revocation was stayed so long as the debtor paid its tax arrearages and current taxes pursuant to a repayment plan. The debtor defaulted several times, and on April 7, 1981, the County Circuit Court affirmed the license revocation. On April 10, 1981, William Tell filed a petition under Chapter 11 of the bankruptcy code. Thereafter, the debtor filed a motion to have its liquor license restored on the grounds that the state liquor statutory provision violated 11 U.S.C. § 525. The bankruptcy court ordered the license restored, however, when the license expired, the debtors' application for renewal was denied by the Commission. Consequently, the debtor sought relief from the bankruptcy court, which again entered an order of renewal. Additionally, the bankruptcy court suspended the operation of a section of the Dram Shop Act

contained in the Illinois statutes with respect to the debtor. According to this order, liquor purveyors could deliver liquor to the debtor on a c.o.d. basis. The Commission appealed these two orders to the district court, alleging that: (1) the enforcement of the license revocation is an exercise of state police and regulatory power exempt from the automatic stay by 11 U.S.C. § 362(b)(4), and; (2) its enforcement actions did not improperly discriminate against the debtor under 11 U.S.C. § 525.

The court, in examining the 11 U.S.C. § 362(b)(4) exception to the automatic stay, stated:

> courts have determined that 'the term "police or regulatory power" refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court.'

38 B.R. at 329 (quoting *State of Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982)). Furthermore, the court noted that even if a state proceeding was not automatically stayed, bankruptcy courts could enjoin governmental conduct under 11 U.S.C. § 525. 38 B.R. at 330.

With respect to the first license revocation, the district court in *In re William Tell II, Inc.* determined that the Commission was acting under the state's police power pursuant to 11 U.S.C. § 362(b)(4). However, the court noted that the license had been revoked because of William Tell's failure to pay taxes, and that this issue had been pending in the County Circuit Court when the debtor filed its petition. Ultimately, the court concluded that the Commission's enforcement of the liquor regulations "did not affect the public health, welfare, morals or safety," and that the proceeding before the Circuit Court was automatically stayed pursuant to 11 U.S.C. § 362. 38 B.R. at 330.

With respect to the second order renewing the debtor's license, the district court relied upon 11 U.S.C. § 525 of the bankruptcy code to uphold the bankruptcy court's decision. The bankruptcy court had found that enforcement of the state regulation discriminated against the debtor because the primary purpose for revoking the debtor's license was the failure to pay taxes, which debt would have been dischargeable. 38 B.R. at 331.

In the instant matter, the defendants rely upon the case of *Duffey v. Dollison*, 734 F.2d 265 (6th Cir.1984), to support their contention that enforcement of N.J.Admin. Code tit. 13, § 2–24.4 (1984) against the debtor does not discriminate against the debtor and therefore is not violative of 11 U.S.C. § 525. That case, however, is distinguishable from the instant matter.

In *Duffey v. Dollison*, the debtors alleged that enforcement of Ohio's Motor Vehicle Financial Responsibility Act as to them was discriminatory and thus violative of 11 U.S.C. § 525 of the Bankruptcy Code. The financial responsibility law required the suspension of driver licenses and registrations of individuals who failed to pay judgments arising out of automobile accidents within thirty days upon written request of the judgment creditor or the judgment creditor's attorney. Pursuant to the financial responsibility law, driving privileges were to remain suspended for seven years, or until the judgment was stayed or satisfied and proof of financial responsibility was submitted. It is noteworthy that a previous version of the financial responsibility statute had been deemed unconstitutional to the extent that it required the payment of a tort judgment entered as a result of an automobile accident as a prerequisite to restoration of driving privileges. This payment requirement had applied regardless of whether the judgment had been stayed or discharged in bankruptcy. 734 F.2d at 269.

The *Duffey v. Dollison* court held that the new financial responsibility statute, which required individuals who failed to pay judgments arising out of automobile accidents to post proof of financial responsibility as a prerequisite to restoration of their driving privileges, was not preempted

by federal bankruptcy law. In reaching its decision, the court distinguished the statutory provision at issue therein from the one at issue in *Perez v. Campbell.* The *Duffey v. Dollison* court stated that in order to regain privileges, the statute in *Perez v. Campbell* required payment of a judgment, even if its collection was stayed or it was discharged in bankruptcy, while the statute in *Duffey v. Dollison* merely required proof of future financial responsibility. 734 F.2d at 272.

■■■ The New Jersey Administrative Code provision presently at issue, N.J.Admin.Code tit. 13, § 13:24–4.4 (1984), unlike the statute at issue in *Duffey v. Dollison,* requires that the debtor pay prepetition debts in order to regain its ability to deal with wholesalers on a credit basis. Accordingly, N.J.Admin.Code tit. 13, § 2–24.4 (1984) is violative of 11 U.S.C. § 525 as applied to the debtor.

■■■ On the basis of *Duffey v. Dollison,* the defendants in the instant matter argue that the regulatory scheme in question does not run afoul of 11 U.S.C. § 525. They assert that the prohibition against discriminatory treatment contained in 11 U.S.C. § 525 does not affect consideration of purely economic criteria, such as a decision to grant credit, because future financial responsibility is a legitimate consideration of a creditor. This court believes that 11 U.S.C. § 525 would not prohibit a governmental unit from acting or proceeding against a debtor based upon consideration of the future financial responsibility of a debtor. *See, Duffy v. Dollison,* 734 F.2d 265 (6th Cir.1984); *Matter of Alessi,* 12 B.R. 96 (Bkrtcy.N.D.Ill.1981). The prohibition of 11 U.S.C. § 525 extends to actions based upon the event of bankruptcy or insolvency before or during bankruptcy, or based upon the nonpayment of a debt discharged or dischargeable in bankruptcy.

■■■ The application of the c.o.d. provision, as embodied in N.J.Admin.Code tit. 13, § 2–24.4 (1984) to the instant debtor as a result of unpaid prepetition invoices does not represent a valid financial responsibility rule. The debtor, to comply with this regulation, would either have to pay prepetition invoices in derogation of the priorities established by the Bankruptcy Code, or obtain a relaxation of the regulation by submission of a formal debt liquidation plan which is satisfactory to the Director of the ABC. The defendants assert that the debtor has numerous options to meet the standards of the credit regulation, such as: (1) to remain in default and purchase liquor on a c.o.d. basis; (2) to establish a "funded" line of credit for purchases; (3) to pay the prepetition debts at issue, or; (4) to resume credit at the time a "formal debt liquidation" plan, which is satisfactory to the Director of the ABC, is proposed or filed. This court finds none of these options to be satisfactory.

Counsel for the Unsecured Creditors' Committee appeared in support of the debtor's application, and voiced objections to the payment of prepetition obligations to specific wholesalers. Furthermore, the debtor has the exclusive right to formulate a reorganization plan for at least 120 days from the date of the filing of its petition. Consequently, compelling the debtor to submit a plan earlier in order to deal with wholesalers on a credit basis would essentially deprive the debtor of that statutorily created breathing spell during the early months of its reorganization effort. N.J. Admin.Code tit. 13, § 2–24.4 (1984) as it operates herein, is not a test of future financial responsibility, but rather is an obstacle to the operation of the clear provisions of the Bankruptcy Code dealing with prepetition claims.

This court finds that there has been no showing that the debtor lacks the ability to meet the thirty day credit terms specified in N.J.Admin.Code tit. 13, § 2–24.4 (1984) at the present time or in the future. Robert J. Pinard, Deputy Director of the Regulatory Bureau of the Division of ABC testified that the ABC has not prepared any report pertaining to this debtor showing that there is an imminent threat of the evils of the "Tied House" which N.J.Admin.Code tit. 13, § 2–24.4 (1984) is intended to prevent.

This court also rejects the defendants' argument that the frustration of which the debtor complains is not the type, degree or caliber to warrant relief under 11 U.S.C. § 525 because liquor sales account for only a small portion of the debtor's gross receipts. The defendants contend that a review of the affidavit of Kathy L. McDonnell, the director of purchasing for the debtor, submitted in support of the complaint, demonstrates that the hardship experienced by the debtor is mere inconvenience, insignificant and *de minimus* in light of the state regulatory scheme. The defendants assert that the affidavit further demonstrates that the cumbersome procedures for payment of liquor purchases, inspection of deliveries, and calculation of and payment of taxes are the same whether the debtor purchases liquor on a credit or a c.o.d. basis. The degree of the hardship experienced by a debtor, however, is irrelevant to whether the debtor is entitled to protection under 11 U.S.C. § 525 against the action causing the harm.

The defendants in the matter presently before the court argue that the regulation at issue is non-discriminatory both in its application and in its effect on retail businesses. The defendants base this argument on the fact that the regulation applies to all retailers who fail to satisfy credit obligations within thirty days, not just to retailers who have filed for protection under the bankruptcy laws. This argument is meritless, however, in light of the inherent conflict between the effect of the enforcement of the regulation on the debtor, and the goals and policies of the bankruptcy laws. The debtor cannot be compelled to satisfy unpaid prepetition invoices in derogation of the provisions of the Bankruptcy Code.

Accordingly, this court holds that the operation of N.J.Admin.Code tit. 13, § 2–24.4 (1984) as enforced by the ABC and its director against the debtor herein, constitutes discriminatory treatment, from which the debtor is entitled to protection pursuant to 11 U.S.C. § 525. Additionally, the ABC and its director are ordered to remove the debtor's name from any delinquency list on which it appears as a result of the debtor's failure to pay dischargeable prepetition invoices of wholesalers arising from the debtor's prepetition purchases of alcoholic beverages.

An order in accordance with this opinion was entered on February 10, 1986.