### In re WILL ROGERS JOCKEY & POLO CLUB, INC., Debtor.

### WILL ROGERS JOCKEY & POLO CLUB, INC., Plaintiff, Caveat Capital Corporation, Intervening Plaintiff,

### v.

### OKLAHOMA HORSE RACING COMMISSION, Defendant.

Bankruptcy No. 89–00070–C.
Adv. No. 89–0290–C.

United States Bankruptcy Court,
N.D. Oklahoma.

March 13, 1990.

James R. Hicks and Leslie A. Kissinger, Tulsa, Okl., for plaintiff.

Neal Leader, Asst. Atty. Gen., Oklahoma City, Okl., for defendant.

## MEMORANDUM DECISION AND ORDER

STEPHEN J. COVEY, Bankruptcy Judge.

On March 2, 1990, the Court heard the cross motions for summary judgment filed by Will Rogers Jockey & Polo Club, Inc. ("Will Rogers"), Plaintiff herein, and the Oklahoma Horse Racing Commission ("Racing Commission"), Defendant herein. After considering the evidence and the arguments and authorities submitted by counsel, the Court makes the following findings of fact and conclusions of law.

On January 17, 1989, Will Rogers filed its petition for relief under Chapter 11 of the Bankruptcy Code commencing this bankruptcy case. Will Rogers owns and operates a facility in Claremore, Oklahoma, consisting in large part of a horse racing track ("Will Rogers Downs"). On May 18, 1989, Will Rogers filed in this case a plan of reorganization which the Court has neither approved nor disapproved. On June 1, 1989, pursuant to the proposed plan of reorganization, Will Rogers submitted an application to the Racing Commission for approval of an organizational license to conduct pari-mutuel horse racing at Will Rogers Downs in 1990. After hearings before the Racing Commission on July 19 and 20, 1989, Will Rogers was allowed to amend its racing application. Will Rogers submitted its amended racing application to the Racing Commission on July 31, 1989. On August 17, 1989, the Racing Commission conducted a hearing on the amended racing application and orally denied the application. On September 21, 1989, the Racing Commission issued its written denial of the racing application. On September 29, 1989, Will Rogers initiated this adversary proceeding by filing a Complaint for Injunctive and Declaratory Relief against the Racing Commission, which Complaint has subsequently been amended.

In its Amended Complaint, Will Rogers requests that the Court enter judgment declaring that the Racing Commission's de-

nial of its racing application (1) violated 11 U.S.C. § 525,[1] (2) unduly interfered with the aims and intents of Will Rogers' reorganization and rehabilitation, and (3) was void as not authorized by the Oklahoma Horse Racing Act. The Amended Complaint further requests that the Court order the Racing Commission to grant Will Rogers' racing application or that the Court itself approve the application. Finally, the Amended Complaint requests that the Court enjoin the Racing Commission from arbitrary, capricious and unduly burdensome conduct designed to hinder Will Rogers' reorganization and rehabilitation.

In its motion to dismiss the Amended Complaint, converted by the Court to a motion for summary judgment, the Racing Commission seeks denial of the Amended Complaint on the grounds that the Court lacks both personal and subject matter jurisdiction and, further, that the action of the Racing Commission did not violate any provision or policy of the Bankruptcy Code. In its cross motion for summary judgment, Will Rogers requests that the Court grant the relief sought in its Amended Complaint on the grounds stated therein, except that Will Rogers does not ask this Court to rule on whether the Racing Commission exceeded its statutory authority in denying its racing application.

## A. PERSONAL JURISDICTION

■ The Court must first address the issue of its personal jurisdiction to hear the

claims brought against the Racing Commission. More precisely, the issue is whether the Racing Commission, an agency of the State of Oklahoma, is immune from suit on these claims in federal court under the Eleventh Amendment of the United States Constitution. U.S. CONST. amend. XI;[2] *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

The Court holds that it does not have personal jurisdiction to hear Will Rogers' claim that the Racing Commission exceeded its statutory authority in denying Will Rogers' racing application. This claim is founded on state law and, as such, may not be heard in federal court under the Eleventh Amendment. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984); *In re Begley*, 46 B.R. 707, 717 (E.D.Pa.1984).

■ The Court holds that it does have personal jurisdiction to hear Will Rogers' claim brought under 11 U.S.C. § 525. It is undisputed that the Racing Commission is a "governmental unit" as defined in 11 U.S.C. § 101(26) and as employed in 11 U.S.C. § 106(c) and § 525. While the issue is not free of doubt, the Court believes that Congress has the authority to limit the Eleventh Amendment immunity of the states pursuant to 11 U.S.C. § 106(c).[3] *Hoffman v. Connecticut Dept. of Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989);[4] *Pennsylva-*

---

1. 11 U.S.C. § 525 reads in pertinent part as follows:

   ... a governmental unit may not deny ... a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title ... solely because such bankrupt or debtor has been a debtor under this title ..., has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title ...

2. U.S. CONST. amend. XI reads as follows:

   The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of anoth-

er State, or by Citizens or Subjects of any Foreign State.

3. 11 U.S.C. § 106(c) reads, in pertinent part, as follows:

   ... notwithstanding any assertion of sovereign immunity—
   (1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
   (2) a determination by the court of an issue arising under such a provision binds governmental units.

4. In *Hoffman*, four of the Justices stated that Congress had the power to limit state's Eleventh Amendment immunity in enacting the Bankruptcy Code, two of the Justices stated that Congress did not have such power, and the remaining Justices did not reach the issue.

*nia v. Union Gas Co.,* —— U.S. ——, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), wherein a plurality held that Congress acting under the Commerce Clause may abrogate Eleventh Amendment immunity; and *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), wherein a majority held that Congress acting under the 14th Amendment may abrogate Eleventh Amendment immunity. In *Hoffman,* the plurality construed 11 U.S.C. § 106(c) and held that Congress's abrogation of state's Eleventh Amendment immunity thereunder did not extend to suits for money recovery where the state had not filed a claim in the bankruptcy case. The Supreme Court reasoned that the provisions of § 106(c)(1) were limited by (c)(2), which speak only of determination of issues and do not mention monetary recovery. *Hoffman,* 109 S.Ct. at 2822–23. The Supreme Court went on to say that "[t]he language of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery." *Id.* at 2823. In the instant case, Will Rogers seeks only declaratory and injunctive relief under 11 U.S.C. § 525 and, therefore, the Court finds that it has personal jurisdiction over the Racing Commission with regard to this claim. See also *Elsinore Shore Associates v. New Jersey Division of Alcoholic Beverage Control,* 66 B.R. 708, 714 (Bankr.D.N.J.1986).

■ The Court also has personal jurisdiction to hear Will Rogers' claim that the Racing Commission's denial of its racing application unduly interfered with its reorganization and rehabilitation under Chapter 11 in violation of the Supremacy Clause of the United States Constitution. U.S. CONST. art. VI, cl. 2; [5] *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); and *Elsinore Shore,* 66 B.R. at 714. In *Perez,* the Supreme Court held an Arizona statute unconstitutional because it violated the fresh start policy of the federal bankruptcy laws by withholding driving privileges from bankruptcy debtors who had not paid certain discharged debts.

## B. SUBJECT MATTER JURISDICTION

■ Secondly, the Court must address its jurisdiction over the subject matter of Will Rogers' Amended Complaint. The Court need not discuss the claim that the Racing Commission exceeded its statutory authority since, as stated above, the Court has no personal jurisdiction to hear this claim. The Court holds that it has core jurisdiction under 28 U.S.C. § 157(b)(2)(A) and (O) to hear and decide Will Rogers' claims under 11 U.S.C. § 525 and the Supremacy Clause. *Elsinore Shore,* 66 B.R. at 713–14.

## C. THE MERITS

Finally, the Court reaches the merits of Will Rogers' claims under 11 U.S.C. § 525 and the Supremacy Clause. The parties agree and the Court finds that summary judgment is appropriate because the parties do not dispute any material facts but simply disagree over the legal conclusions to be drawn from the facts. The parties have submitted the transcripts of all relevant hearings before the Racing Commission and much additional undisputed evidence. The Court must determine, in light of such evidence, if the Racing Commission's denial of Will Rogers' racing application violated 11 U.S.C. § 525 or conflicted with the purposes of the Bankruptcy Code in violation of the Supremacy Clause.

■ The Court finds that the Racing Commission denied Will Rogers' racing application on two principal grounds: (1) Will Rogers lacked financial integrity and apparent hope of financial success because it would not be able to consummate its pro-

---

5. U.S. CONST. art. VI, cl. 2 reads as follows: This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

posed plan of reorganization,[6] and (2) the Oklahoma horse racing market was "saturated". While the Racing Commission mentioned additional grounds for its decision, the Court finds that but for the two grounds stated above the Racing Commission would have granted the racing application. The Court further finds that the Racing Commission would have denied the racing application on either of the two grounds stated above, notwithstanding the existence of any other ground.

Given the conclusions stated above, the Court holds that the Racing Commission did not violate 11 U.S.C. § 525 in denying Will Rogers' racing application. In essence, 11 U.S.C. § 525 prohibits the Racing Commission from denying or discriminating against Will Rogers' racing application solely because Will Rogers (1) is a debtor-in-possession in this case, (2) has been insolvent, or (3) has not paid a discharged or dischargeable debt. As explained below, the Racing Commission did not deny or discriminate against Will Rogers' racing application in any of these ways.

■ The Racing Commission properly examined the financial integrity and hope of financial success of Will Rogers. Both the legislative history and case law are quite clear that, under 11 U.S.C. § 525, governmental units may properly consider future financial responsibility or ability if they do not do so discriminatorily—that is, if they consider the future financial responsibility or ability of all applicants regardless of whether they are bankruptcy debtors. H.R.REP. NO. 95–595, 95th Cong.,

1st Sess. 366–67 (1977); S.REP NO. 95–989, 95th Cong., 2d Sess. 81, U.S.Code Cong. & Admin.News 1978, 5787 (1978); *Duffey v. Dollison,* 734 F.2d 265 (6th Cir.1984); *Christmas v. Maryland Racing Commission,* 102 B.R. 447 (Bankr.D.Md.1989); *Norton v. Tennessee Department of Safety,* 867 F.2d 313 (6th Cir.1989). Pursuant to the Oklahoma Horse Racing Act, the Racing Commission must consider the "financial integrity" of all applicants and the plans they present for approval. 3A O.S. § 205.2(C)(1); *Oklahoma Park Inc. v. Oklahoma Horse Racing Commission,* 716 P.2d 666, 669 (Okla.1986). Furthermore, under the Oklahoma Horse Racing Act, the Racing Commission has broad plenary power to promulgate rules and regulations governing horse racing in Oklahoma, including the granting of racing applications. 3A O.S. §§ 203.7, 204. Pursuant to that authority, the Racing Commission has enacted rules stating that, among other factors, the Racing Commission shall consider both the financial integrity and apparent or non-apparent hope of financial success of each applicant in determining whether to grant an application to conduct pari-mutuel horse racing. Racing Commission Rule 204(N)(15) and (16).[7] The Court finds that the Racing Commission applied the same financial integrity and hope of financial success tests in considering Will Rogers' racing application as it does in considering other racing applications. In applying these tests, the Racing Commission focused on Will Rogers' ability to meet its future financial obligations under its

---

6. Will Rogers submitted its proposed plan of reorganization with its racing application as evidence of its financial integrity and ability to succeed financially.

7. Racing Commission Rule 204(N)(15) and (16) states in pertinent part:

(N) In considering the granting or denying of an organization's application for a license to conduct horse racing with the pari-mutuel. system of wagering, the following criteria, standards, and guides should be considered by the Commission:

15. Financial Integrity
  a. Economic Integrity of Financial Plan
(1) .Equity
(a) Source
(b) Amount

(c) Position
(d) Type
(2) Debt
(a) Source
(b) Amount
(c) Terms
(d) Repayment
(3) Equity to Debt Ratio
  b. Moral Integrity of Financing Plan
(1) Identity of Participants
(2) Role of Participant
(3) History of Participants
(4) Law Enforcement Intelligence
(5) Reputation of Participants
16. Apparent or Non–Apparent Hope of Financial Success

proposed plan of reorganization and concluded that Will Rogers could not successfully consummate its proposed plan of reorganization. In weighing the evidence, the Racing Commission could have reached the conclusion that Will Rogers lacked the requisite financial integrity and apparent hope of financial success. While this Court might disagree with the Racing Commission's conclusion, it cannot substitute its judgment for that of the Racing Commission, even though its specific expertise in the area of evaluating plans of reorganization far exceeds that of the Racing Commission. This point will be further elaborated in the Court's later discussion of Will Rogers' claim under the Supremacy Clause.

■ The Racing Commission also properly examined whether the Oklahoma horse racing market was already saturated by the existing Remington Park and Blue Ribbon Downs tracks. Pursuant to its plenary power to regulate horse racing, the Racing Commission has enacted rules which prohibit "oversaturation" of the horse racing market and which set forth a rebuttable presumption that the current horse racing market is saturated by the Remington Park and Blue Ribbon Downs tracks until such time as their combined annual gross handle exceeds $230 million in any two calendar years. Racing Commission Rules 204.1, 204.2. These rules provide that all applicants other than Remington Park and Blue Ribbon Downs must prove that the horse racing market in Oklahoma is not saturated by those existing tracks. While it is true that the Racing Commission's rules are "discriminatory" against applicants other than Remington Park and Blue Ribbon Downs, such "discrimination" applies regardless of whether the applicant is a bankruptcy debtor, has been insolvent, or has not paid a dischargeable debt, and, therefore, such "discrimination" does not violate 11 U.S.C. § 525. Rather, the "discrimination" is based on the Racing Commission's decision to protect the already operating tracks and its determination that oversaturation of the horse racing market "... would be detrimental to the generation of public revenue, encouragement of agriculture and the breeding of horses in the State, and would be further detrimental to the maintenance of race meetings of the highest quality, free of corrupt practices ...". Racing Commission Rule 204.1. In weighing the evidence, the Racing Commission could have reached the conclusion that the Oklahoma horse racing market was saturated by the Remington Park and Blue Ribbon Downs tracks. While the Court may disagree with the conclusion, it cannot substitute its judgment for the Racing Commission's, especially in an area where the Racing Commission's expertise far exceeds the Court's.

In summary, the Court holds that the Racing Commission's denial of Will Rogers' racing application did not violate 11 U.S.C. § 525 because such denial was not based on Will Rogers' status as a debtor in this case, its past insolvency, or its failure to pay a dischargeable debt.

■ Next, the Court considers Will Rogers' claim that the Racing Commission's denial of its license unduly interfered with its bankruptcy reorganization and therefore violated the Supremacy Clause. The more specific issue raised is whether the Bankruptcy Code reserves to the Bankruptcy Court the sole power to evaluate the future financial ability of a debtor-in-possession under a proposed plan of reorganization so that the Racing Commission's consideration of Will Rogers' future financial ability was improper.

The Court first notes that resolution of this issue is not strictly necessary to uphold the Court's decision. Even if Will Rogers were correct and the Supremacy Clause prohibits the Racing Commission from considering Will Rogers' future financial ability under its plan of reorganization, the Court has held that the Racing Commission would have denied the racing application on the grounds of market saturation alone and such denial was proper under 11 U.S.C. § 525.

■ In considering the merits of the Supremacy Clause argument, the Court must first construe the purposes of the respective state and federal statutes and then determine the constitutional question

 

of whether their purposes conflicted. *Perez*, 402 U.S. at 644, 91 S.Ct. at 1708. The Court must focus on whether the challenged state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Perez*, 402 U.S. at 649, 91 S.Ct. at 1711; *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

■■■ The Court finds that, in the context of a reorganization, the purpose of Chapter 11 of the Bankruptcy Code is to encourage and foster the repayment of creditors while allowing the debtor-in-possession to rehabilitate his business, but such rehabilitation must be in accordance with valid state laws. Under 28 U.S.C. § 959(b), a debtor-in-possession such as Will Rogers must "... manage and operate the property in his possession ... according to the requirements of the valid laws of the state in which such property is situated ..." Also, under 11 U.S.C. § 362(b)(4), governmental units such as the Racing Commission are not stayed from enforcing police or regulatory provisions. Finally, under 11 U.S.C. § 525, a governmental unit is not prohibited from examining future financial ability of applicants in granting or denying licenses under its police power.

The Court finds that the purposes of Oklahoma's horse racing regulations, including the regulations allowing the Racing Commission to examine an applicant's future financial ability, are to (1) encourage agriculture and horse breeding in Oklahoma; (2) maintain horse racing in Oklahoma of the highest quality and free of corrupt, incompetent, dishonest, or unprincipled practices; (3) maintain the fact and appearance of complete honesty and integrity of horse racing in Oklahoma; and (4) generate public revenues. 3A O.S. § 203.7. There is no question that the State of Oklahoma has the right under its police power to enact such regulations governing horse racing within the state. *In re Alessi*, 12 B.R. 96, 98 (Bankr.N.D.Ill.1981).

The Court finds that the provisions and policies of the Bankruptcy Code do not conflict with Oklahoma's rules and regulations allowing the Racing Commission to consider Will Rogers' future financial ability. The Court finds that the effect of 28 U.S.C. § 959(b) and 11 U.S.C. § 362(b)(4) is to eliminate any inherent conflict between the federal bankruptcy policy favoring rehabilitation of debtors and Oklahoma's regulation of horse racing. *Saravia v 1736 18th St., N.W., Ltd. Partnership*, 844 F.2d 823, 826-27 (D.C.Cir.1988); *In re Friarton Estates Corp.*, 65 B.R. 586, 588-90 (Bankr.S.D.N.Y.1986). The Court more specifically finds that the effect of 11 U.S.C. § 525 and its legislative history indicates that there is no conflict between the function of the Bankruptcy Court to evaluate plans of reorganization and the ability of the Racing Commission to deny licenses for lack of future financial ability, even if this involves the evaluation of a proposed plan of reorganization.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Will Rogers' motion for summary judgment be denied, that the Racing Commission's motion for summary judgment be granted, and that the Amended Complaint be dismissed for the reasons stated above.