## In re WILLIAM TELL II, INC., Bankrupt.

## WILLIAM TELL II, INC., Appellee,

### v.

## STATE OF ILLINOIS LIQUOR CONTROL COMMISSION, Appellant.

### No. 81 C 4678.

United States District Court, N.D. Illinois, E.D.

May 26, 1983.

Karen Konieczny, Asst. Atty. Gen., Chicago, Ill., for appellant.

Morgan & Susman, Dale Smirl, Chicago, Ill., for appellee.

## MEMORANDUM OPINION

FLAUM, District Judge:

This action is an appeal from three related orders of the Bankruptcy Court which required the State of Illinois Liquor Control Commission (the "Commission") to continue to provide the Debtor, William Tell II, Inc. ("Tell"), a retail liquor license and to suspend operation of a state statutory provision with respect to Tell. For the reasons stated below, those orders are affirmed.

Tell is engaged in the restaurant, liquor lounge and banquet hall business in Countryside, Illinois. Tell makes retail sales of alcoholic liquor as part of its business and it has been issued retail liquor licenses by the State of Illinois and the City of Countryside. On April 10, 1981, Tell filed a petition for relief under chapter 11 of the United States Bankruptcy Code. Tell is now being operated by a court appointed Trustee. The Commission is a state agency created pursuant to the Dram Shop Act, Ill.Rev.Stat. ch. 43, § 94 et seq. Among other duties and responsibilities, the Commission issues, supervises, and revokes liquor licenses within the State of Illinois. Illinois liquor licenses are valid for one year.

On December 28, 1979, the Commission issued a citation and notice of hearing to Tell to show cause why its liquor license should not be revoked for failure to pay an outstanding state retailers' occupation tax arrearage of $82,055.98. Under section 120a of the Dram Shop Act, a licensee's failure to pay taxes owing to the state is grounds for license revocation. On May 14, 1980, after an evidentiary hearing, the Commission revoked Tell's license for failure to pay the state taxes owing. No review of this administrative action was sought. Tell did apply for renewal of its license, though, since the revoked license

expired in May anyway. The Commission granted Tell a new license.

The Commission subsequently learned that Tell's May 1980 application contained false statements and the Commission again issued a citation and notice of hearing to Tell. After a hearing, the Commission revoked Tell's license on October 8, 1980. Tell challenged the revocation in an administrative review action in the Circuit Court of Cook County. In that action, the parties entered into a series of agreed orders under which the Commission's revocation of Tell's license was stayed as long as Tell met a schedule for repayment of occupation tax arrearages and current occupation tax liabilities. Under the orders, if tax payments were late or insufficient, the Circuit Court's stay would be vacated and when the payments were made the stay of the revocation was reimposed. This pattern was repeated several times until the Circuit Court entered an order affirming the Commission's revocation on April 7, 1981.

On April 10, 1981, Tell filed its chapter 11 petition. On April 20, 1981, Tell filed a motion to restore its liquor license alleging a violation of 11 U.S.C. § 525. An evidentiary hearing was held on May 7, 1981 and the Bankruptcy Court ordered the Commission to restore the license. That license, however, expired in May 1981 and Tell applied for renewal. The application was denied and Tell again sought relief from the Bankruptcy Court. On July 7, 1981, the Commission was ordered to renew the license. In the period between the two Bankruptcy Court orders concerning the licenses, the court entered another order which the Commission opposed. In the order dated June 2, 1981, the Bankruptcy Court suspended the operation of section 122 of the Dram Shop Act, Ill.Rev.Stat. ch. 43, § 122, with respect to Tell. Under that order, liquor purveyors were permitted to deliver liquor to Tell on a cash-on-delivery basis.

In this appeal, the Commission seeks reversal of the two orders compelling the issuance of a liquor license to Tell and of the order suspending the operation of section 122 of the Dram Shop Act. In support of this appeal, the Commission first argues that its enforcement of the license revocations is exempt from the stay provisions in the Bankruptcy Reform Act of 1978, 11 U.S.C. § 362(a), because its enforcement proceedings are an exercise of state police and regulatory powers and are therefore exempt under 11 U.S.C. § 362(b)(4). Second, the Commission argues that the record does not support the Bankruptcy Court's findings that the Commission's actions improperly discriminated against Tell within the meaning of 11 U.S.C. § 525. Thus, the Commission argues that the Bankruptcy Court had no authority to usurp its regulatory authority and permit Tell to operate in violation of state law.

■ Under 11 U.S.C. § 362, the filing of a bankruptcy petition ordinarily stays all judicial and other proceedings concerning the debtor. However, this general provision contains several listed exceptions, including 11 U.S.C. § 362(b)(4) ("§ 362(b)(4)") which provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—
>
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]

This exception, though, has its own judicially interpreted exceptions. The courts have determined that "the term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court". *State of Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir. 1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *see also Donovan v. Timbers of Woodstock Restaurant, Inc.*, 19 B.R. 629 (D.C.N.D.Ill.1981); *In re Gencarelli*, 14 B.R. 751 (Bkrtcy.D.R.I. 1981); *see generally* Annot., 58 A.L.R.Fed.

282 (1982). Thus, although a state proceeding is being conducted under regulatory or police powers, it may be subject to an automatic stay if the proceeding does not concern public health, welfare, morals or safety.

■ In addition, even if a state proceeding is not automatically stayed, a bankruptcy court has authority to enjoin certain conduct under 11 U.S.C. § 525 ("§ 525"). That section provides in pertinent part:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

Critical to an application of § 525 is a determination whether the state's conduct is discriminatory. A bankruptcy court's findings of fact in that regard cannot be set aside by a reviewing court unless they are clearly erroneous. *In re Martin,* 698 F.2d 883, 885 (7th Cir.1983).

■ Applying these standards to this case, the court will first consider the applicability of § 362(b)(4) and the propriety of an automatic stay. The bankruptcy court

did not rely on automatic stay provisions and Tell apparently concedes that the Commission was acting under the state's police powers within the meaning of § 362(b)(4). However, even though the Commission was acting under regulatory and police powers, not every action falls within the § 362(b)(4) exception to an automatic stay. One court has held that a municipal liquor board's attempt to revoke a liquor license is subject to an automatic stay because the basis of the attempted revocation was the debtor's failure to be open for business. The court concluded that the absence of business activity did not threaten the health or safety of the citizenry and it did not violate any consumer, environmental or other similar laws and that therefore the § 362(b)(4) exception should not apply. *In re Gencarelli,* 14 B.R. 751 (Bkrtcy.D.R.I.1981). In this case, the Bankruptcy Court found, under its § 525 analysis, that the Commission revoked Tell's license because of the failure to pay taxes. As discussed below, this finding is not clearly erroneous. Since that was the basis of the revocation proceeding which was pending in the Circuit Court of Cook County when Tell's petition was filed, that proceeding was automatically stayed because the Commission's enforcement of the Act in this case did not affect the public health, welfare, morals or safety. *Compare Colonial Tavern, Inc. v. Byrne,* 420 F.Supp. 44 (D.Mass.1976) (suspension of liquor license upheld for repeated violations of midnight closing hour regulation (previous Bankruptcy Act)). Therefore, the Bankruptcy Court's first order ordering the Commission to restore Tell's license must be affirmed because the proceeding[1] to revoke the license was stayed.[2]

This determination of the automatic stay issue, however, does not resolve the issues raised with respect to the other orders appealed because the license that was ordered restored in the first order expired. The

---

**1.** The Commission has referred to the revocation as being final because the Circuit Court had affirmed the Commission's action. However, this court deems the revocation proceeding pending at the time Tell's petition was filed because Tell had not exhausted its rights of

appeal. *See* Ill.Rev.Stat. ch. 110, § 3–112 and ch. 110A, § 303.

**2.** Alternatively, as discussed later in this opinion, the Bankruptcy Court's ruling is supported by the record as valid under § 525.

second order to renew Tell's liquor license involved an application for renewal that was filed by Tell after the Chapter 11 petition was filed, was not a part of the earlier revocation proceeding and, thus, was not subject to the automatic stay. In addition, the bankruptcy court's order concerning suspension of a provision of the Dram Shop Act did not relate to any pending proceeding by the Commission to enforce that provision.

 With respect to the second order renewing Tell's liquor license, the relevant language of § 525 is as follows: "a governmental unit may not deny or refuse to renew a license to a debtor soley because [the] debtor has not paid a debt that is dischargeable". In this case, the Bankruptcy Court found that the Commission discriminated against Tell because the primary purpose for revoking and not renewing Tell's license was Tell's failure to pay certain taxes. The Commission argues that the May 1980 revocation was based on Tell's false statements on its application. However, the Bankruptcy Court disagreed and also found that, in any event, the Commission's conduct in the administrative review action, as exhibited in the agreed orders, was discriminatory because the Commission made the validity of Tell's license conditional on the payment of taxes. The court also found that the Commission's denial of renewal of the license was discriminatory for the same reasons as the two revocations. Since the outstanding tax liability is a dischargeable debt within the meaning of § 525, *see* 11 U.S.C. § 1141(d)(1)(A) and § 1129(a)(9), (c), the Commission's denial of renewal of Tell's license was improperly discriminatory unless the Bankruptcy Court's findings are clearly erroneous. Having reviewed the record, this court concludes they are not. The Commission's own characterization of the record supports this conclusion: "Far from establishing a violation of Section 525, it is equally plausible to infer that Tell, faced with a series of adverse state administrative and judicial orders, went to the Bankruptcy Court to shield itself from the consequences of state law." Commission Reply Brief at 5. The existence of contrary but equally plausible inferences does not render findings clearly erroneous.

 The only remaining matter is the Bankruptcy Court's order suspending § 122 of the Dram Shop Act. This order was based on the same type of findings and rationale as the other orders. The Commission's argument on this point incorporates its other assertions about allegedly erroneous findings and it contends that a Bankruptcy Court has no authority to contravene the provisions of the Dram Shop Act. No authority is cited for the latter assertion. In a factual setting virtually identical to this one, the Bankruptcy Court for the Western District of Missouri addressed the issue presented. Under the reasoning and authorities set forth in *In re Jacobsmeyer*, 13 B.R. 298 (Bkrtcy.W.D.Mo.1981), this court concludes that the Bankruptcy Court had the authority to suspend § 122 of the Dram Shop Act in this case and that the exercise of that authority was not an abuse of discretion.

Accordingly, the Bankruptcy Court's orders are affirmed.