STATE

v.

**Lendon E. BOSS.**

84–191–C.A.

Supreme Court of Rhode Island.

April 3, 1985.

S. Arlene Violet, Atty. Gen., Jeffrey B. Pine, Sp. Asst. Atty. Gen., for plaintiff.

John D. Lynch, Warwick, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Lendon E. Boss, was indicted by a grand jury on December 3, 1981, charging him with operating a vehicle in reckless disregard of the safety of others resulting in the death of another, in violation of G.L.1956 (1968 Reenactment) § 31–27–1, as amended by P.L.1978, ch. 208, § 2. The case was tried before a justice of the Superior Court sitting with a jury on May 5, 1983,[1] which returned a verdict of guilty against the defendant. His motion for a new trial was denied on June 6, 1983, and he is now before us on appeal.

---

1. On November 18, 1982, defendant began his first trial, but a mistrial was declared on November 19, 1982. A second trial was com- menced on November 22, 1982, but when the jury was unable to return a verdict, a mistrial was declared on November 30, 1982.

The record discloses that on July 25, 1981, at approximately 1:45 a.m. a group of six people, riding on motorcycles, were traveling on Route 2 northbound. John DeFusco and Diane Tavares were on one machine, Charles Coury and Doreen Karras were on another, and Norman Strobel and Ann Watson were on the third. When the motorcycles reached a ramp leading from Route 2 to Route 4 in East Greenwich, defendant's vehicle, a black Toyota, flashed its high beams and passed the motorcycles from behind at a high rate of speed. After passing the cycles, defendant's vehicle began to weave and swerve between the two northbound lanes on Route 4. Thereafter, according to the testimony, defendant looked into his rear view mirror and slammed on his brakes twice. The motorcycles were a short distance behind defendant's vehicle, which suddenly went out of control, spinning sideways. As a result, the motorcycle operated by Norman Strobel collided with the rear quarter of defendant's vehicle, and as it spun off defendant's vehicle, it was hit by the Coury motorcycle. Strobel's motorcycle then hit a utility pole. Strobel suffered permanent injuries, and Ann Watson, the passenger, died of her injuries. Charles Coury and Doreen Karras suffered lesser injuries.

Several witnesses who happened upon the scene immediately after the fatal collision testified that defendant's eyes appeared red, his speech was slurred, and he swore when asked if he was all right. Two police officers from East Greenwich testified that they detected an odor of alcohol on defendant's breath, and one of the officers testified that in his opinion defendant was under the influence of alcohol. No breathalyzer test, however, was administered. Doctor John DeFeo, an expert in pharmacology, also testified for the state. He stated that defendant's physical characteristics and his blood-alcohol level established by blood tests taken at the hospital, suggested that defendant had to have consumed twelve to fourteen bottles of beer, or approximately ten ounces of 100-proof whiskey, prior to the accident.

The defendant, testifying in his own behalf, denied that he was intoxicated since he had only consumed two or three beers prior to the accident.

In response, the state was allowed, over defendant's objection, to introduce medical records from Kent County Memorial Hospital that indicated that defendant had a blood-alcohol level of .20 when the test was administered sometime between 2:18 a.m. and 4:49 a.m. on the day in question.

On appeal, defendant raises two issues: (1) whether the trial justice erred in denying his motion to dismiss pursuant to Rule 48(b) of the Superior Court Rules of Criminal Procedure and (2) whether the trial justice erred in allowing the introduction of defendant's medical records.

I

The defendant contends that the trial justice, in considering the Rule 48(b) dismissal, failed to conduct a hearing and that his decision was not supported by any facts. He additionally asserts that the ten-month interval from his arraignment on January 7, 1982, to the first trial on November 16, 1982, was not caused by him, but by the state, and that the state failed to justify the delay.

Rule 48(b)[2] allows a trial justice to dismiss the case for unnecessary delay even though a defendant's constitutional right to a speedy trial has not been violated. *State v. Austin*, R.I., 462 A.2d 359, 364 (1983). The trial justice's decision will not be disturbed unless there is a showing of a clear abuse of discretion. *State v. Dionne*, R.I., 442 A.2d 876, 881 (1982).

The only issue that we need address is whether the delay was unnecessary. *State v. Austin*, 462 A.2d at 364. Once a defendant demonstrates that the delay was not a result of his doing, he has established a prima facie case of unnecessary delay

2. This case is governed by Rule 48(b) since the Rule was not repealed until November 21, 1984.

and the burden shifts to the state to show some justification for that delay. *State v. Paquette,* 117 R.I. 505, 511, 368 A.2d 566, 569 (1977).

■ Our review of the record indicates that defendant on December 27, 1982, objected to a motion to assign the case for trial and also asked that the trial be continued from April 18, 1983, to April 25, 1983. Further, the record reveals that discovery was not completed and the first-trial assignment date of March 8, 1982, was passed. Discovery was not complete until sometime just prior to the first trial date. In fact, defendant filed his answer to the state's request for discovery on November 19, 1982. The defendant, therefore, being accountable for some of the delay, has failed to make a prima facie case of unnecessary delay. In light of this finding, we affirm the trial justice's denial of the Rule 48(b) dismissal.

## II

The defendant asserts that the hospital records should not have been admitted into evidence pursuant to G.L.1956 (1976 Reenactment) chapter 37.3 of title 5, as amended by P.L.1978, ch. 297, § 1 (see compiler's notes) entitled "The Confidentiality of Health Care Information Act." The Legislature enacted this act with the purpose of preventing third parties from soliciting and procuring confidential health-care information from health-care providers without a patient's consent. *Trembley v. City of Central Falls,* R.I., 480 A.2d 1359, 1363 (1984); *see In Re Board of Medical Review Investigation,* R.I., 463 A.2d 1373, 1374 (1983). According to § 5–37.3–6(2)(A), however, this privilege does not apply and the health-care information can be subject to legal process "when an individual introduces his physical or mental condition * * as an element of his claim or defense * *."

■ In construing a statute, we must give the words their plain and ordinary meaning unless there is an ambiguity. *Rule v. R.I. Department of Transporta-*

*tion,* R.I., 427 A.2d 1305, 1310 (1981). A reading of the Health Care Confidentiality Act makes it clear that once the physical and mental condition of the claimant is placed in issue, the privilege as to confidentiality of medical records is waived. *See State v. Soney,* 177 N.J.Super. 47, 56–57, 424 A.2d 1182, 1187 (1980); *Commonwealth v. EL,* 273 Pa.Super. 1, 12–13, 416 A.2d 1058, 1064 (1979).

■ In the instant case, defendant testified on direct examination that he had consumed two or three beers. In response to the question of what was the status of his mental and physical state while he was travelling north on Route 2 and then on Route 4, he said, "Fine." Then, on cross-examination, in response to the question of whether he was "in full possession of [his] mental and physical faculties," he said, "[T]hat's correct." When asked if he was sober, defendant responded, "Yes." It is clear from the record that defendant, as part of his defense, testified to his physical and mental condition as contemplated under the exemption portion of § 5–37.3–6(2)(A) and thereby waived his privilege.

Accordingly, we are of the opinion that the trial justice was not in error when he allowed into evidence the hospital records pertaining to the defendant's physical condition in regard to the blood-alcohol level.

The defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.