**In re Robert HOFFMAN, d/b/a "Hoffman's Meat & Convenience Store," d/b/a "Hoffman's Steak House," Debtor.**

**Appeal of R. Gary CLARK, Tax Administrator, State of Rhode Island.**

Bankruptcy No. 8200631.

Civ. A. No. 85–0094–S.

United States District Court,
D. Rhode Island.

Oct. 22, 1986.

Arlene Violet, Atty. Gen., Marcia McGair Ippolito, William P. Tocco, III, Counsel, R.I. Div. of Taxation, Providence, R.I., for appellant R. Gary Clark, Tax Administrator.

Louis Geremia, Quinn, Cuzzone, Geremia & Pennacchia, Providence, R.I., for appellee debtor.

John Boyajian, Andrew S. Richardson, Boyajian, Coleman & Harrington, Prov-

idence, R.I., for appellee trustee in bankruptcy.

## OPINION

SELYA, District Judge.

This appeal arises out of a Chapter 13 bankruptcy petition filed by Robert L. Hoffman on July 28, 1982, a matter subsequently converted to a case under Chapter 7 of Title 11 in 1984. The debtor, a sole proprietor doing business under several trade names including that of "Hoffman's Steak House" (Hoffman's), listed among his assets a Class B–V liquor license issued in his name by the Board of Licensing Commissioners for the City of Newport.

In December of 1984, the trustee in bankruptcy (trustee) filed a notice of intended sale pursuant to 11 U.S.C. § 363(b), in which the trustee (on behalf of the estate) forewarned all concerned that he proposed to sell the liquor license to a third party, Island Bridge Corporation, for a substantial sum. The notice further stated that such "sale will be free and clear of liens and encumbrances of record."

The Rhode Island Division of Taxation (Division), by its tax administrator, objected to the anticipated sale. The Division contended that it was owed $553.66 in state taxes by the debtor/licensee, and that state law required proof of payment of this debt prior to any valid transfer of the license. Following briefing and argument, the United States Bankruptcy Court for the District of Rhode Island (Votolato, J.) issued a written order on January 17, 1985 to the effect that the trustee could sell the subject liquor license free and clear of any outstanding tax obligations owing to the state. 53 B.R. 874. The instant appeal, which invoked 28 U.S.C. § 158(a) as its jurisdictional wellspring, ensued.[1]

Refined to its barest essence, the issue that confronts this court is whether the state can condition the transferability of the debtor's liquor license on the payment of delinquent taxes. Inasmuch as none of the relevant facts are in dispute, it falls to this court to resolve this singular question as a matter of first impression in this district. Because purely legal issues are involved, no special deference is owed to the decision below. *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985); *In re Roco Corporation*, 64 B.R. 499, 500 (D.R.I.1986).

### I.

■ We begin with an assay of the pertinent federal statutes. 11 U.S.C. § 541(a)(1) provides in part that the "estate is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." Moreover, § 541(c)(1)(A) indicates that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—(A) that restricts or conditions transfer of such interest by the debtor...." Despite appellant's contentions to the contrary, it is clear beyond cavil that the debtor's liquor license, whatever may be its dimensions, *see* text *post*, constitutes "property" within the Bankruptcy Code's definition thereof. *See In re Gencarelli*, 14 B.R. 751, 752 (Bankr. D.R.I.1981). *See also In re Aegean Fare, Inc.*, 35 B.R. 923, 927 (Bankr.D.Mass.1983); *Harris v. Lamping*, 12 B.R. 38, 40 (Bankr. E.D.Wis.1981); *Matto's, Inc. v. Olde Colonie Place*, 9 B.R. 89, 92 (Bankr.E.D.Mich. 1981). Note, too, that R.I.Gen.Laws § 3–5–19 provides that "[n]o creditor shall be allowed to object to transfer of a [liquor] license by a receiver, trustee in bankruptcy, assignee for the benefit of creditors,

1. During the pendency of the appeal, the arrangement which had been negotiated with Island Bridge collapsed. For a time, proceedings were held in abeyance, as the parties wrangled about whether the appeal was moot. On September 16, 1986, however, the trustee filed a new § 363(b) notice commemorating his intention to sell the liquor license "free and clear" to L & M Associates for $30,000. The Division objected, but the bankruptcy judge overruled the protest. The parties have agreed that this appeal will determine the validity of the proposed transfer to L & M, and the trustee has warranted that he will withhold consummation of the actual sale pending this court's decision on the merits.

executor, administrator, guardian or by any public officer under judicial process." At the least, this language unambiguously recognizes *as a matter of state law* the authority of a trustee in bankruptcy to transfer a liquor license as property of the estate.

Fundamentally, then, this appeal calls into question the relationship between the Bankruptcy Code's provisions regarding the disposition of estate property and a Rhode Island statute disallowing the transfer of a liquor license until the holder pays any state taxes which may be owing thereon. In order to discern the proper juxtaposition of these laws, the logical starting point is the state statute itself, viz., R.I. Gen.Laws § 3–7–24, which provides as follows:

> Every licensee under this chapter, upon filing an application for renewal or transfer of such license, shall submit with such application a certificate executed by the tax administrator, or some employee designated by the tax administrator, that taxes due the state have been paid. For the purposes of this section, taxes due the state shall include contributions due including taxes, interest and penalties due to the Department of Employment Security pursuant to the Employment Security Act and Temporary Disability Insurance Act. No such license shall be renewed or transferred without such certificate.

The bankruptcy court ruled that, by virtue of the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2,[2] various provisions of the Bankruptcy Code—namely, 11 U.S.C. §§ 363(f), 362(a)(1), 541(a)(1), and 525(a)—preempt and supersede, in the bankruptcy milieu, the state tax statute. Accordingly, the court found the Rhode Island statute to violate the automatic stay provisions of federal bankruptcy law, 11 U.S. § 362, as well as the broader policies of "discharge" and "fresh start" underlying the Code. The tax administrator's effort to deploy this statutory roadblock to the trustee's sale—by conditioning transfer of the license on payment of prepetition taxes—was held to be an impermissible derogation of the Bankruptcy Code's priority provisions.

Contracting the lens of inquiry further, the conflict can be brought into sharper focus. 11 U.S.C. § 362(a)(1) directs that:

> a petition filed ... operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title. . . .

The shelter of the automatic stay is further extended by 11 U.S.C § 362(a)(6) to cover "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." The automatic stay is, of course, the most basic protection afforded to a debtor by the Code, and its scope is deservedly broad. It applies to virtually any action—be it formal or informal—that could be taken against either the debtor or the property of the estate. 2 Collier on Bankruptcy ¶ 362.04 at 362–27 (15th ed. 1983). Therefore, it can hardly be gainsaid that the tax administrator's attempt to require the debtor to pay delinquent, prepetition taxes falls within the purview of the automatic stay.

## II.

The appellant argues, however, that 11 U.S.C. § 362(b)(4) exempts the Division's actions from the automatic stay. That section provides that "[t]he filing of a petition ... does not operate as a stay—(4) under

---

**2.** The text of the Supremacy Clause reads:

This Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shll be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." But, not every maneuver by every arm of every sovereign qualifies for the balm of § 362(b)(4). In order to fall within the exception, the primary purpose of the state proceeding must be the conservation of the public safety, health, or welfare. The exemption will not lie if the objective of a given state law is the solvency of the public fisc or, put another way, the protection of a state's pecuniary interest in property. *Missouri v. United States Bankr. Court*, 647 F.2d 768, 775–76 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed. 2d 318 (1982); *In re Thomassen*, 15 B.R. 907, 909 (Bankr. 9th Cir.1981); *In re Aegean Fare, Inc.*, *supra*, at 927–28; *In re William Tell II, Inc.*, 38 B.R. 327, 329–30 (N.D.Ill.1983); *In re Gencarelli, supra*, at 752–53. *See generally* Annot., 58 A.L.R.Fed. 282 (1982).

The statute's legislative history tells us that § 362(b)(4) holds a governmental proceeding harmless from the automatic stay when—and only when—the action is taken against the debtor and/or the property of the estate "to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws...." H.R.Rep. 595, 95th Cong., 1st Sess. 342–43 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 51–52 (1978), *reprinted in* [1978] U.S.Code Cong. and Ad. News 5787, 5837, 5838, 5963, 6299.

The distinction drawn between purposes "pecuniary" and those "police or regulatory" in nature finds its lodestar in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).[3] In *Perez*, a husband and wife, both bankrupt, were denied certain driving privileges under an Arizona law which required them to satisfy a prepetition traffic accident judgment as a precondition to licensure. To the extent that this state statute had the effect of frustrating the discharge granted the debtors under the federal bankruptcy laws, the *Perez*

Court held it to be at odds with the Supremacy Clause of the United States Constitution. The Court reiterated that, when assessing the validity of a state statute in light of a federal law touching upon the same subject matter, the judicial function is to determine whether the challenged (state) enactment " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Perez*, 402 U.S. at 649, 91 S.Ct. at 1711, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). In short, state and local governmental units cannot, merely by invoking the nominal exercise of their police or regulatory powers, circumvent the prophylaxis afforded to debtors and creditors alike by federal bankruptcy law. When a nonfederal sovereign acts for a pecuniary purpose, its initiatives must be automatically stayed, notwithstanding the (narrow) exception found at 11 U.S.C. § 362(b)(4).

The first substantial question which confronts this court reduces to a black-or-white determination of whether R.I.Gen. Laws § 3–7–24 qualifies as an exercise of the state's police or regulatory power. If so, the Division's approach does not run afoul of the Supremacy Clause and deserves to be ratified. But, if the statute is, as the bankruptcy judge suggests, merely a pecuniary mechanism directed toward the collection of delinquent taxes, then a contrary result obtains. Clearly, if the law is not aimed at guarding the public safety, health, or welfare, then actions taken pursuant to such authority will not be excepted from the automatic stay provisions of federal bankruptcy law, *see* 11 U.S.C. § 362(b)(4), the Supremacy Clause will dominate, and the trustee, unless some other impediment exists, can transfer Hoffman's liquor license free and clear of the debtor's state tax obligations. This would, of course, leave Rhode Island as just another creditor, obliged to stand in line awaiting the payment of dividends if and when funds become available for that purpose.

---

**3.** Congress has since codified the *Perez* result statutorily. *See* 11 U.S.C. § 525(a).

█ If the principles and conceptual underpinnings of *Perez* are applied in a sober, evenhanded fashion, it is surpassingly difficult to see how R.I.Gen.Laws § 3–7–24 can constitute an exercise of police or regulatory power within the meaning of 11 U.S.C. § 362(b)(4). First and foremost, the statute on its face in no way pertains to public safety, health, or welfare. It simply states that the tax administrator must issue a certificate signifying that taxes due the state have been paid prior to any transfer of a covered license. This requirement, by its terms, is in the nature of a revenue measure, a method of collecting delinquent taxes—no more, no less. As such, the law snugly fits the description of "pecuniary" legislation of the sort that will not be excepted from the automatic stay. *See In re Thomassen,* 15 B.R. at 909; *In re Mason,* 18 B.R. 817, 821–22 (Bankr.W.D.Tenn. 1982). If the law looks like a revenue collection measure and operates like a revenue collection measure, the chances are excellent that, when all is said and done, it is indeed a revenue collection measure.

Second, that the tax administrator enjoys no control over the issuance, renewal, and transfer of liquor licenses belies the claim that § 3–7–24 represents an exercise of the state's police power. Rhode Island law vests such authority in the State Liquor Control Administration and in local licensing boards. *See* R.I.Gen.Laws §§ 3–2–2, 3–5–15. Section 3–7–24 confers no substantive authority whatever over the regulation of liquor licenses, and the tax administrator derives none from any other provision of the law. It is a dubious proposition that the naked power to block a transfer until delinquent taxes are paid, without governance or control of any other kind over licenses or licensees, can be tantamount to an exercise of police or regulatory power.

Third, outside of the Ninth Circuit, *see post,* the relevant caselaw supports the decision reached by the court below. In *In re Aegean Fare, Inc., supra,* a municipal licensing board refused to renew a liquor license held by a Chapter 11 debtor on the basis of a Massachusetts statute which forbade the renewal of a license without a certificate from the Commonwealth indicating that taxes were paid to date. Relying on the pecuniary/police distinction articulated by the Supreme Court in *Perez,* the bankruptcy court held the provisions of the Massachusetts statute to be at cross purposes to federal bankruptcy law, thus repugnant to the Supremacy Clause, and therefore, stayed by operation of 11 U.S.C. § 362(a)(1). "This statute is not a valid exercise of the Commonwealth's police power but rather is an action that seeks the obtainment of a pecuniary advantage by doing indirectly that which the Commonwealth is prohibited from doing directly." *In re Aegean Fare, Inc.,* 35 B.R. at 928.

To like effect, *In re Anderson,* 15 B.R. 399, 401 (Bankr.S.D.Miss.1981) applied the teachings of *Perez* to order a state licensing authority to renew a debtor's liquor license. The state's objection that renewal was contraindicated because the debtor was delinquent on its taxes was summarily rejected. And, in *In re William Tell II, Inc., supra,* the district court affirmed a bankruptcy court order directing the Illinois State Liquor Control Commission to issue the debtor a license despite the existence of tax obligations which (by state statute) had to be satisfied prior to the issuance of a renewed permit. *Id.,* 38 B.R. at 330.

Finally, the bankruptcy court in this district has held that a municipal licensing board's attempted revocation of a liquor license, based upon the debtor's failure to be open for business, is subject to the automatic stay. The bankruptcy court concluded that the absence of business activity did not imperil the health or safety of the citizenry, nor did it violate any consumer, environmental, or other (kindred) law. Accordingly, the § 362(b)(4) exception did not apply. *In re Gencarelli, supra.* The *Gencarelli* court carefully reviewed those cases which have recognized the § 362(b)(4) exception, and the results of its survey are instructive:

Those cases which have allowed the regulatory activities exception generally fall into the categories outlined by the House Report [No. 95–595, described *ante* at 7], e.g., *Colonial Tavern, Inc. v. Byrne*, 420 F.Supp. 44 (D.Mass.1976) (suspension of liquor license upheld for repeated violations of a midnight closing hour regulation); *Commonwealth v. Peggs Run Coal Co.*, 423 A.2d 765, Bank.L.Rptr. (CCH) ¶ 67842 (Pa.1980) (to allow the closing of a coal production facility which was violating local environmental resource laws); *In re Carmen Alessi*, 12 B.R. 96, 7 B.C.D. 1037 (N.D.Ill.1981) (suspension of a racing license was upheld because of the appearance of "fixing" a race. The suspension maintained the integrity of a horse racing facility). These cases all concern the enforcement of laws protecting the health and/or safety of the public, or protecting the public from being defrauded.

*Id.*, 14 B.R. at 753.

It is plain that the case at bar is wholly dissimilar from those instances catalogued in *Gencarelli*. And, it is worth mentioning that bankruptcy courts (outside of the Ninth Circuit) uniformly refuse to allow state authorities to take action against a bankrupt debtor's liquor license when such action is premised solely on the sovereign's professed entitlement to overdue tax payments.

This court, though recognizing that the Ninth Circuit has espoused a contrary view, finds the logic of *Aegean Fare* and cases like it far more palatable than the stew which the Division has concocted. The court holds that R.I.Gen.Laws § 3–7–24 does not constitute regulatory legislation of the sort which Congress meant to except from the Bankruptcy Code's automatic stay. Rather, the state law appears in all material respects to be a statutory mechanism enlisted in the service of the collection of delinquent taxes. As such, the statute cannot avoid the effect of the automatic stay under the exemption limned in 11 U.S.C. § 362(b)(4).

## III.

The *Perez*-styled argument, however, is not the only shot in appellant's sling. The tax administrator contends alternatively that R.I.Gen.Laws § 3–7–24 is designed not to establish a priority claim against the bankrupt estate, but rather to limit the nature of the estate's property interest in the liquor license. This statute, the appellant's thesis runs, operates to sculpt the license (and therefore, its value) from the time the permit is given to the holder, and thus, to mold its configuration well before it passes as property into the bankrupt estate. The Division maintains that, inasmuch as the state conceived the license and conferred value upon it, the state can likewise place conditions upon, and limit the worth of, the very property so created. In fine, it is the appellant's creed that the state giveth and the state taketh away.

Accordingly, the tax administrator asseverates that Rhode Island, through the instrumentality of R.I.Gen.Laws § 3–7–24, permissibly trimmed the resale value of liquor licenses by burdening them with an obligation for the payment of state taxes prior to any transfer. Under this reasoning, Hoffman's, qua licensee, received only the value of the license so encumbered. In turn, only the shrunken value entered the bankrupt estate when Hoffman's became insolvent. And, only the encumbered license is now—or was ever—available for resale. From this scenario, the appellant argues that the enforced payment of delinquent taxes takes nothing from the estate, for the trustee in bankruptcy cannot transfer value the estate never enjoyed.

This view is not altogether lacking in logical support, and it has some respectable following in the caselaw. The Ninth Circuit, for example, has construed state laws similar to the Rhode Island statute in the very manner urged by appellant. *See In re Farmers Markets, Inc.*, 792 F.2d 1400, 1403 (9th Cir.1986); *In re Anchorage Intern. Inn, Inc.*, 718 F.2d 1446, 1450–51 n. 3 (9th Cir.1983). Yet, with respect, there are grounds upon which such a result can validly be questioned.

To be sure, the Bankruptcy Code does recognize certain "preferences" created under state law, such as perfected security interests and statutory liens. *See, e.g.,* 11 U.S.C. § 506(a). Bellwethers of this sort escape preemption, however, because they operate as substantive limitations on the property interests to which they are applied. Any so-called preference conferred upon the state qua creditor is a function (de facto) of rights in the property which it retained pursuant to legislative mandate. In other words, although a statute may operate to favor the state over other creditors, it may nevertheless survive the Supremacy Clause if the objective of the state law can reasonably be viewed as "not so much one of priority of claims as one of defining the nature of the bankrupt's property to which the claims attach...." *In re Professional Bar Co.,* 537 F.2d 339, 340 (9th Cir.1976).

The question thus becomes whether R.I. Gen.Laws § 3–7–24 may properly be construed as a delimitation of the scope and content of Hoffmans' liquor license, in the nature of a lien. This construction would in substance disjoin the state's rights (to tax payments) in the liquor license, and a fortiori reduce the extent of the proprietary interest of the debtor-licensee, working a corresponding reduction of the interest that may pass to the estate under 11 U.S.C. § 541(a).

Although mindful that the Ninth Circuit has endorsed precisely such a view in recent cases, *see In re Farmers Markets, Inc., supra; In re Anchorage Intern. Inn, Inc., supra,* this approach to the interpretation of R.I.Gen.Laws § 3–7–24 cannot readily be countenanced. Whatever the merit of the Ninth Circuit's construction of the California and Alaska statutes which it has considered in this context (and on this point, no opinion is warranted or expressed), a rational reading of Rhode Island's statutory scheme leads inexorably to the conclusion that a trustee in bankruptcy

should be allowed to sell a liquor license unencumbered by the debtor's outstanding state tax obligations. Contrary to the appellant's imprecation, the statutory mosaics are simply not homoousian.

The court notes at the outset that nothing in the Rhode Island law conveys the slightest hint of any legislative intent to confine the contours of a state-created liquor license to certain enumerated indicia of ownership, or to restrict the interests in a license which a trustee in bankruptcy may convey as property of the estate. Indeed, the state legislature, if judged by its acts and deeds, seems inclined to the contrary position.

We turn initially to the words of the Rhode Island General Assembly:

*No creditor* shall be allowed to object to transfer of a [liquor] license by a receiver, *trustee in bankruptcy,* assignee for the benefit of creditors, executor, administrator, guardian or by any public official under judicial process.

R.I.Gen.Laws § 3–5–19 (emphasis supplied).[4]

At first blush, there is no necessarily irreconcilable conflict between this statute and R.I.Gen.Laws § 3–7–24, which allows the tax administrator to block a license transfer unless and until certain taxes have been remitted. But, by attempting to use the powers inherent in § 3–7–24 as a cudgel to club a trustee in bankruptcy into submitting to the monetary demands of the Division as a precondition to transfer, the appellant has created an unbearable tension between § 3–7–24 and § 3–5–19.

It is black letter law that, if two ordinances conceived by the same legislative body are susceptible to an harmonious construction in *pari passu,* without distortion of the language or evident meaning of either, then such a construction is to be preferred to one which sets the two enactments at swords' points. The appellant attempts to dispel the statutory conflict which his actions have created by explain-

4. It is significant that this language finds no parallel in the California statute, interpreted by the Ninth Circuit in *Farmers Markets, supra,* or in the Alaska laws examined by the court of appeals in *Anchorage Intern. Inn, supra.*

ing that he acted pursuant to regulatory authority, and not as a "creditor" within the meaning of § 3–5–19, when he protested against the sale of Hoffman's license and invoked the spectre of § 3–7–24 in his endeavor to inhibit a transfer until state tax obligations had been satisfied. Yet, that asseveration seems disingenuous. For one thing, its central thesis has previously been discredited: § 3–7–24 in no way casts the tax administrator in a regulatory role. *See ante* Part II.

More to the point, the term "creditor" is by no means some strange visitor from the legal lexicon. The phrase enjoys everyday usage and has a plain, unambiguous meaning in ordinary parlance. Webster's Dictionary (2d ed. 1983), which is typical in this respect, defines a creditor as "one to whom a sum of money ... is due." Indeed, under long standing Rhode Island law, "[a] creditor has been defined to be one who has a *right to require fulfillment of an obligation....*" *Herbert v. Handy*, 29 R.I. 543, 549, 72 A. 1102 (1909) (emphasis supplied). In the case at bar, the tax administrator has attempted to link the debtor's ability to transfer his liquor license to prepayment of certain tax obligations supposedly owed the state. He maintains that he has, in the *Handy* phrase, "a right to require fulfillment of an obligation." Therefore, under the familiar rule of statutory construction, which prudently dictates that words be given their plain and ordinary meaning, *see State v. Boss*, 490 A.2d 34, 36 (R.I.1985), and under (perhaps less familiar) principles of common sense, the tax administrator can only be viewed as a "creditor" of the licensee. And, as such a creditor, the appellant cannot escape the compelling embrace of R.I.Gen.Laws § 3–5–19.

■ The only viable way to reconcile the two state statutes—and one which possesses the added virtue of skirting any conflict with federal bankruptcy law as well—is to construe R.I.Gen.Laws § 3–7–24 as being inapplicable to a license transfer by a trustee in bankruptcy, receiver, or other like fiduciary. Such an interpretation finds support in the language of § 3–7–24, which by its terms extends only to transfers by licensees. When this wording is compared with the specific reference to transfers by, inter alia, trustees in bankruptcy contained in § 3–5–19, it seems entirely plausible that, in enacting § 3–5–19, the Rhode Island legislature recognized the desirability of permitting bankruptcy trustees (and others similarly situated) to convey liquor licenses free of the distraint which would impede the licensee himself from making the transfer. This court certainly recognizes the sound policy arguments which can be offered in support of such a dichotomy: for example, that solvent licensees should not be able lightly to avoid tax obligations, whereas the state should be willing to stand aside in order to ease the transition of a liquor license from the unsteady hands of a licensee deluged by red ink into the more secure grasp of one who can be expected to generate—and to pay—greater tax revenues.

Moreover, canons of statutory construction suggest the same result. As the Supreme Court has noted,

> a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.... "The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular ... previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all."

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976) (quoting T. Sedgwick, The Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed. 1874)). Inasmuch as R.I.Gen.Laws § 3–5–19 was enacted before § 3–7–24, one can confidently assume that the latter would,

like the earlier enactment, have specifically referred to trustees in bankruptcy had the General Assembly intended it to apply to transfers by such fiduciaries.

In sum, though it is not altogether implausible to read R.I.Gen.Laws § 3–7–24 in the vernacular favored by the Ninth Circuit, that is, as a lien-like limitation on the aggregate of rights which comprise a liquor license, this court holds that the better insight visualizes the statute for what it seems to be: a legislative device designed to foster the collection of delinquent debts. This result is suggested by the statutory framework that surrounds the law, and ultimately, commanded by the Supremacy Clause. So viewed, the statute's operation is stayed in the bankruptcy context.

### IV.

Although the court is not unmindful of the states' constitutional authority to regulate the distribution of liquor, see U.S. Const.Amend. XXI, or their right to create liens in favor of certain creditors,[5] R.I.Gen. Laws § 3–7–24 cannot logically be construed to function on either of these planes. The state statute is a revenue collection measure only; as such, it cannot thwart or frustrate the aims of the federal Bankruptcy Code. And what is more, there are independent state law grounds for holding that R.I.Gen.Laws § 3–7–24 does not limit the nature of a liquor license as property; indeed, state law suggests that the proviso has no application whatever to the conveyance of such licenses by trustees in bankruptcy.

Accordingly, the appellee, a trustee in bankruptcy, is entitled to transfer the debtor's liquor license free and clear of any tax liabilities owed by the debtor/licensee to the state.[6] The bankruptcy court's order

of January 17, 1985, and its more recent decree permitting the sale of Hoffman's Class B–V license to L & M free and clear, see ante n. 1, are each therefore

*Affirmed.*

---

5. "The mechanic's lien and the security interest under the Uniform Commercial Code are but two examples of interests in particular property, created pursuant to state statutes, that are fully respected by the general bankruptcy law." *In re Anchorage Intern. Inn, Inc.,* 718 F.2d 1446, 1451 (9th Cir.1983).

6. This rescript should not be construed as suggesting that a trustee in bankruptcy is excused from compliance with other (non-pecuniary) state laws governing the issuance and transfer of liquor licenses. A trustee in bankruptcy cannot sell a liquor license to, say, a convicted felon, where state law, see R.I.Gen.Laws § 3–5–10, ordains to the contrary. Such provisions of Rhode Island law are in no way either preempted by the Bankruptcy Code's automatic stay or invalidated by the Supremacy Clause.