632 METACOM ASSOCIATES

v.

PUB DENNIS OF WARREN, INC.

No. 89–515–A.

Supreme Court of Rhode Island.

May 14, 1991.

Marc D. Wallick, Warwick, for plaintiff.

Diane Finkle, Winograd, Shine & Zacks, Providence, Pasquale T. Annarummo, Warren, for defendant.

Marcia McGair Ippolito, Chief Legal Officer, Div. of Taxation, Bernard J. Lemos, Legal Officer, Div. of Taxation, for Tax Adm.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on a receiver's appeal from a Superior Court order denying his petition for a supplemental order in aid of a sale of assets. We affirm.

The relevant facts are as follows. On May 31, 1988, the representatives of 632 Metacom Associates (plaintiff) filed a petition in the Superior Court for the appointment of a receiver for Pub Dennis of Warren, Inc. (defendant). The plaintiff owned the premises leased by defendant and claimed that defendant owed back rent of more than $40,000 on its lease. The Superior Court issued a receivership notice on June 22, 1988. The receiver filed a petition to sell the assets of defendant, free and clear of all liens, on October 28, 1988. Thereafter, on November 17, 1988, the Superior Court authorized the sale of all the assets of defendant, consisting primarily of restaurant equipment and a liquor license, to Larry H. Friedman (Friedman), d/b/a LGH Realty, free and clear of all liens, for the sum of $35,000. A first and final report of the receiver was filed on April 24, 1989, along with the receiver's recommendations for allowance of claims. His recommendations, which were accepted by the Superior Court, included $43,798.61 owed to the Rhode Island Division of Taxation for business corporation taxes, sales taxes, withholding taxes, temporary disability taxes, and employment security taxes.

During the pendency of the receivership proceedings, the receiver obtained approval and authorization from the Warren Town Council to transfer defendant's liquor license to J.E. Restaurant, Inc. (J.E.), as nominee of Friedman. In September 1989, however, J.E. was advised by the Warren town clerk that in order to consummate the actual transfer of the liquor license, J.E. would have to present a certificate of good standing (certificate) indicating that defendant's delinquent state taxes had been paid. This requirement was mandated by G.L. 1956 (1987 Reenactment) § 3-7-24, which provides:

"Certificate of payment of state taxes. —Every licensee under this chapter, upon filing an application for renewal or transfer of its license, shall submit with the application a certificate executed by the tax administrator, or some employee designated by the tax administrator, that taxes due the state have been paid. For the purposes of this section, taxes due

the state shall include contributions due including taxes, interest and penalties due to the Department of Employment Security pursuant to the Employment Security Act, chapters 42–44 of title 28, and Temporary Disability Insurance Act, chapters 39–41 of title 28. *No license under this chapter shall be renewed or transferred without that certificate.*" (Emphasis added.)

In response to this obstacle to transferring the liquor license, the receiver filed a petition for a supplemental order in aid of the sale of assets with the Superior Court on September 14, 1989. The petition sought an order directing Warren's Town Council and town clerk to transfer the liquor license to J.E. and declaring § 3–7–24 inapplicable to the transfer of a liquor license by a receiver pursuant to a court-authorized sale, thereby eliminating the need for the presentation of the certificate. The tax administrator objected to the receiver's petition on behalf of the state and argued that § 3–7–24 was applicable to the transfer of a liquor license by a receiver pursuant to a court-authorized sale. After a hearing on the petition, the Superior Court agreed with the tax administrator and denied the receiver's petition in an order filed September 29, 1989.

The parties agreed to a consent order dated October 10, 1989. The consent order allowed J.E., under protest, to pay the $43,-798.61 in delinquent state taxes and receive the liquor license. The consent order also authorized the receiver to pursue an appeal, with notice of the present appeal's being filed on October 16, 1989.

■■■■ On appeal the receiver raises only one argument that we must address. He argues that the tax administrator, as a creditor of defendant, is barred by G.L. 1956 (1987 Reenactment) § 3–5–19 from objecting to the transfer of the liquor license by the receiver pursuant to a court-authorized sale. Section 3–5–19 provides in relevant part: "No creditor shall be allowed to object to *transfer of a license by a receiver,* trustee in bankruptcy, assignee for the benefit of creditors, executor, administrator, guardian or by any public officer under judicial process." (Emphasis added.) The receiver's other arguments on appeal were not presented to the trial justice for his consideration and therefore are not properly before us. *Fiske v. MacGregor, Division of Brunswick,* 464 A.2d 719, 726 (R.I. 1983). Those arguments were (1) that the tax administrator's conduct constituted "self-help" collection measures in violation of receivership proceedings and the Superior Court order approving the sale of assets while effectively reordering the long-standing priorities among the creditors' claims, (2) that the receiver's petition did not constitute an attempt to circumvent the statutory provisions regulating liquor license transfers, and (3) that the tax administrator waived his right to object to the transfer of the liquor license by failing to file an objection to the receiver's petition for the sale of assets.

In support of his argument the receiver places great reliance on the interpretation given the relationship between § 3–5–19 and § 3–7–24 by the United States District Court for the District of Rhode Island in the case of *In re Hoffman,* 65 B.R. 985 (D.R.I.1986). In *Hoffman* the District Court was presented with the similar issue of whether the tax administrator may, pursuant to § 3–7–24, condition the transfer of a debtor's liquor license under the Bankruptcy Code on the payment of delinquent state taxes. The District Court was reviewing an earlier Bankruptcy Court determination that, by virtue of the Supremacy Clause of the United States Constitution, various provisions of the Bankruptcy Code preempt and supersede, in the bankruptcy milieu, the operation of § 3–7–24. The Bankruptcy Court ruled that the tax administrator may not condition the transfer of a debtor's liquor license under the Bankruptcy Code on the payment of delinquent state taxes.

In agreeing with the decision of the Bankruptcy Court, the District Court in *Hoffman* rejected the two arguments advanced by the tax administrator for the proposition that the operation of § 3–7–24 should be recognized under the Bankruptcy Code. The tax administrator first argued

that § 3–7–24 is an exercise of the state's police or regulatory power and therefore falls within the exception to the automatic stay provisions of the Bankruptcy Code found in 11 U.S.C.A. § 362(b)(4)(West 1979). Specifically, 11 U.S.C.A. § 362(b)(4) provides that the "filing of a petition [for bankruptcy] does not operate as a stay * * * of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." The District Court stated that the "substantial question which confronts this court reduces to a black-or-white determination of whether R.I.Gen.Laws § 3–7–24 qualifies as an exercise of the state's police or regulatory power." *Hoffman*, 65 B.R. at 988. In answering this question in the negative, the District Court found § 3–7–24 to have a pecuniary purpose and "not [to] constitute regulatory legislation of the sort which Congress meant to except from the Bankruptcy Code's automatic stay." *Id.* at 990.

The tax administrator next argued that § 3–7–24 created a recognizable preference under the Bankruptcy Code because the statute operated as a limit on the property interests of the liquor license that passed into the bankrupt estate. The District Court summarized the tax administrator's argument as follows:

"Accordingly, the tax administrator asseverates that Rhode Island, through the instrumentality of R.I.Gen.Laws § 3–7–24, permissibly trimmed the resale value of liquor licenses by burdening them with an obligation for the payment of state taxes prior to any transfer. Under this reasoning, Hoffman's, qua licensee, received only the value of the license so encumbered. In turn, only the shrunken value entered the bankrupt estate when Hoffman's became insolvent. And, only the encumbered license is now—or was ever—available for resale. From this scenario, the appellant argues that the enforced payment of delinquent taxes takes nothing from the estate, for the trustee in bankruptcy cannot transfer value the estate never enjoyed." *Id.*

In its analysis the District Court acknowledged that the Bankruptcy Code recognizes certain "preferences" created under state law, such as perfected security interests and statutory liens. *Id.* The District Court stated that these "preferences" created under state law escape preemption by the Bankruptcy Code because they operate as limits on the property interests to which the preferences are applied. Thus, "although a statute may operate to favor the state over other creditors, it may nevertheless survive the Supremacy Clause if the objective of the state law can reasonably be viewed as 'not so much one of priority of claims as one of defining the nature of the bankrupt's property to which the claims attach.'" *Id.* at 991 (quoting *In re Professional Bar Co.*, 537 F.2d 339, 340 (9th Cir.1976)). The District Court summarized the issue as follows:

"The question thus becomes whether R.I.Gen.Laws § 3–7–24 may properly be construed as a delimitation of the scope and content of Hoffman's liquor license, in the nature of a lien. This construction would in substance disjoin the state's rights (to tax payments) in the liquor license, and a fortiori reduce the extent of the proprietary interest of the debtor-licensee, working a corresponding reduction of the interest that may pass to the estate under 11 U.S.C. § 541(a)." 65 B.R. at 991.

In analyzing whether the Legislature intended that § 3–7–24 restrict the property interests in a liquor license that a trustee in bankruptcy may transfer as part of the bankrupt estate, the District Court explored the relationship between § 3–5–19 and § 3–7–24.

The District Court found § 3–5–19 and § 3–7–24 to be in conflict:

"At first blush, there is no necessarily irreconcilable conflict between [§ 3–5–19] and R.I.Gen.Laws § 3–7–24, which allows the tax administrator to block a license transfer unless and until certain taxes have been remitted. But, by attempting to use the powers inherent in § 3–7–24 as a cudgel to club a trustee in bankruptcy into submitting to the monetary demands of the Division as a precondition to transfer, the appellant has cre-

ated an unbearable tension between § 3–7–24 and § 3–5–19." 65 B.R. at 991.

The District Court resolved the conflict between § 3–5–19 and § 3–7–24 by interpreting § 3–7–24 to be inapplicable to a liquor-license transfer by a *trustee in bankruptcy, receiver, or other like fiduciary.* 65 B.R. at 992. Therefore, the District Court found that § 3–7–24 did not create a recognizable preference under the Bankruptcy Code because it failed to operate as a limit on the property interests of the liquor license that passed into the bankrupt estate.

We have undertaken this lengthy analysis of the District Court's decision in *Hoffman* because the case is heavily relied upon by the receiver for the proposition that § 3–7–24 is inapplicable to the transfer of a liquor license by a receiver pursuant to a court-authorized sale and because the decision analyzes the relationship between § 3–5–19 and § 3–7–24, the two state statutes at issue in the matter before us. We emphasize, however, that *Hoffman's* narrow holding that the operation of § 3–7–24 is not recognized under the Bankruptcy Code as either an exception to the automatic stay provisions or a valid preference was premised upon the Supremacy Clause. For this reason the *Hoffman* decision has no binding effect upon this court's determination of the issue now before us concerning a state-receivership action.

The question we must resolve is whether § 3–5–19 prohibits the tax administrator, as a creditor of defendant, from objecting to the transfer of a liquor license by a receiver pursuant to a court-authorized sale. To answer this question, we, like the District Court in *Hoffman*, must analyze the relationship between § 3–5–19 and § 3–7–24.

After carefully examining the statutes, we agree with the District Court that the tax administrator's use of § 3–7–24 to force the receiver to pay delinquent state taxes as a condition to the transfer of the liquor license creates an unbearable tension between § 3–5–19 and § 3–7–24. As a creditor of defendant the tax administrator

is prohibited from objecting to the transfer of the liquor license by the plain language of § 3–5–19. This prohibition conflicts with the mandate given the tax administrator by § 3–7–24 that no liquor license shall be transferred without presentation of the certificate confirming that all delinquent state taxes have been paid. The practical effect of § 3–7–24 is to force the tax administrator to object to any liquor-license transfer when delinquent state taxes have not been paid, notwithstanding the tax administrator's obligation to refrain from doing so under § 3–5–19.

■ To the extent that § 3–5–19 and § 3–7–24 impose upon the tax administrator conflicting obligations, they are irreconcilably repugnant to each other. Although we do not favor repeals by implication, when two statutes are irreconcilably repugnant, we shall imply a repeal and give effect to the more recently passed statute. *City of Providence v. Public Utilities Commission,* 414 A.2d 465, 466 (R.I.1980). This decision is especially appropriate when the more recently enacted statute is more comprehensive and more specific than its conflicting counterpart. *Id.; see also* G.L. 1956 (1988 Reenactment) § 43–3–26.

In the matter before us we are confronted with a general statute of broad application and a specific statute of limited application. Section 3–5–19 applies generally to all creditors, including the tax administrator. Conversely, § 3–7–24 applies specifically only to the tax administrator. Moreover, § 3–7–24 was enacted later than § 3–5–19: § 3–7–24 was enacted in 1972 by P.L.1972, ch. 155, art. VI, § 1, whereas § 3–5–19 was enacted in 1959 by P.L.1959, ch. 154, § 1.[1]

We are of the opinion that the later and more specific statute should prevail. Therefore, § 3–7–24 specifically repealed the inconsistent provisions of all preceding statutes, including § 3–5–19, insofar as such statutes would attempt to prohibit the tax administrator from fulfilling his statutory obligation under § 3–7–24 to ensure

---

1. The legislative history of G.L.1956 (1987 Reenactment) § 3–7–24 is in error. The correct legislative history is stated in the 1990 Cumulative Supplement to Volume 1A, p. 21.

that all delinquent state taxes have been paid prior to the transfer of a liquor license.[2]

Therefore, the appeal is denied and dismissed, the order appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

**2.** We recognize that we have resolved the conflict between G.L.1956 (1987 Reenactment) § 3–5–19 and G.L.1956 (1987 Reenactment) § 3–7–24 in a manner different from that of the District Court. Nevertheless, our interpretation does not analyze whether § 3–7–24 operates as a limit on the property interests of the liquor license entering the bankrupt estate, and therefore, it does not conflict with the District Court's decision under the Bankruptcy Code.